Carrall v. State.

JAMES CARRALL ET AL. V. STATE OF NEBRASKA.

FILED JANUARY 19, 1898.    No. 9574.

| 53 | 431 |
| 55 | 301 |
| 52 | 431 |
| f58 | 322 |
| 53 | 431 |
| 60 | 22 |
| 53 | 431 |
| 61 | 430 |

1. **Summoning Jurors.** The provisions of section 664 of the Code of Civil Procedure in regard to summoning jurors, "Whenever at any general or special term or at any period of a term for any cause there is no panel of * * * petit jurors," are broad enough to cover and include any and all possible reasons for which at any term of a court there may be no panel of jurors present for the trials of causes.

2. ——: CRIMINAL CASES. The provisions of the section to which reference has just been made are applicable in relation to jurors for trials of criminal causes. (Criminal Code, sec. 466.)

3. ——: ——. During the pendency of a term of district court, for which no panel of jurors had been provided for service by the proper officers, a crime was committed and an information filed by the county attorney charging parties with the commission of the crime and the accused were brought before the court for trial. *Held,* To be a condition of affairs within the import of section 664 of the Code of Civil Procedure, and the action of the trial court in ordering jurors summoned as prescribed in said section was proper.

4. **Names.** The names "Mrs. Fred Steinburg" and "Mrs. Fred Steenburg," the first indorsed on an information as the name of a witness, and the second appearing in testimony as her name, are *idem sonans*.

5. **Witnesses: NAMES: INFORMATION.** It is allowable, though probably not the best practice, to indorse the name of a married woman on an information as a prospective witness in a criminal case by

the use of her husband's surname and prefixed thereto the appellative abbreviation "Mrs." and the Christian name or names of her husband or the initial letter or letters thereof.

6. ——: ——: ——. The law does not recognize other than the one or first Christian name, but where a person as a matter of fact has a second or middle Christian name and is commonly known or identified by the use of such middle Christian designation, if his wife's purposed use as a witness in a criminal cause is evidenced by an indorsement of her husband's surname and the abbreviation "Mrs.," together with the middle Christian appellation of the husband, it is sufficient where it does not appear or there is no complaint that the accused person was misled thereby or lacked information of what person was to be produced as a witness.

7. ——: ——: ——. The main purpose of the requirement that the names of witnesses be indorsed on the information in a criminal action is to convey to the accused information or knowledge of the identity of witnesses to be produced on behalf of the state at the trial.

8. Harmless Error: EVIDENCE. The admission of immaterial testimony is not sufficient ground for the reversal of a judgment where not prejudicial to the rights of the complaining party.

9. Instructions: REASONABLE DOUBT. A portion of an instruction, worded as follows: "You are not at liberty to disbelieve as jurors if you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered,"—held not objectionable and erroneous when read and construed with the further portions of the same instruction and the other paragraphs of the charge in that the first sentence did not read, "You are not at liberty to disbelieve as jurors if from the evidence you believe as men," instead of as it did with the omission of the reference to the evidence.

10. Burglary: INSTRUCTION: DEFINITION. The statute defining burglary states, among other things, "If any person shall * * * willfully, maliciously and forcibly break and enter," etc. If in an instruction, in which it is purposed to embody a statement of the elements which constitute the crime and necessary to be proved, the word "maliciously" in reference to the breaking and entering is omitted, it is sufficient if other words, or another word, identical in meaning or expressing the same meaning be used.

11. Instructions: REPETITIONS. It is not error to refuse to give instructions if their substance is embodied and given in the charge to the jury.

12. ——: REVIEW. The actions of the trial court in refusing to give certain requested instructions examined and approved.

13. **Burglary:** EVIDENCE. The evidence *held* sufficient to sustain the verdict.

ERROR to the district court for York county. Tried below before SEDGWICK, J. *Affirmed.*

*M. S. Gray* and *F. C. Power*, for plaintiffs in error.

*C. J. Smyth, Attorney General*, and *Ed P. Smith, Deputy Attorney General*, for the state.

HARRISON, C. J.

In an information filed in the district court of York county the plaintiffs in error were charged with the commission of the crimes of burglary and larceny, and on trial were convicted and sentenced to terms of imprisonment in the penitentiary. To obtain a reversal of the judgment, error proceedings have been prosecuted to this court in their behalf.

The crime of which the plaintiffs in error were convicted was alleged to have been committed in the night-time of the 22d day of May, 1897. The term of court during the continuance of which they were tried had its commencement on April 19, 1897. The information against these parties was filed June 28, 1897. No regular panel of jurors had been drawn or summoned for service during the term of court. The time of the term was apparently, probably according to prior expectation or arrangement, being devoted to the disposition of causes in which the services of jurors were not required. When the information was presented in this cause of the commission of the crime subsequent to the time the court convened it became necessary, if the accused were to be tried during the existing term of court, that a jury be provided for the trial. To meet this exigency the court by order directed the sheriff to summon jurors, the number being fixed at twenty-four. The sheriff complied with the order and the attendance of the required jurors was procured. To a trial by this special panel the ac-

32

cused interposed objections, which were overruled, and they were placed on trial before a jury selected from the jurors summoned in the manner we have indicated.

As one of the assigned errors it is urged that the jurors were not procured for service in a method provided by law; that this branch of the proceedings of the trial of the accused was without warrant of law, was irregular; hence the judgment should be reversed. It is not claimed that the jury was unfair, or that any degree of prejudice resulted to the rights of the parties through the selection of the jurors in the way stated; but whether that there is no such complaint might be to any extent governing in the question we need not in this cause and do not determine. It may be solved on another ground. In section 466 of our Criminal Code it is provided: "In all [criminal] cases, except as may be otherwise expressly provided, the jury summoned and impaneled according to the provisions of the laws in force relating to the summoning and impaneling of juries in other cases shall try the accused." And in section 664 of the Code of Civil Procedure: "Whenever the proper officers fail to summon a grand or petit jury, or when all the persons summoned as grand or petit jurors do not appear before the district courts, or whenever at any general or special term or at any period of a term for any cause there is no panel of grand or petit jurors, or the panel is not complete, said court may order the sheriff, deputy sheriff, or coroner to summon without delay good and lawful men, having the qualifications of jurors, and each person summoned shall forthwith appear before the court, and if competent, shall serve on the grand jury or petit jury as the case may be, unless such person may be excused from serving or lawfully challenged." The provisions of this section are broad enough to cover and include any and all possible reasons for which at any term of court there may be no panel of jurors present for the trial of causes, and the contingencies of the present case are entirely within its scope. The term was convened and progressed

without a panel of jurors, the acts which constituted the alleged crime were committed and the information of them presented to the court after the commencement of its term, and the cause brought before the court was one the disposition of which demanded a jury.   There being none, the court could exercise the power granted it by the section we have 'quoted.   (*People v. Coughlin*, 11 Western Rep. [Mich.] 556, 35 N. W. Rep. 72; *Bennett v. Tintic Iron Co.*, 34 Pac. Rep. [Utah] 61; *Smith v. Bates*, 28 S. W. Rep. [Tex.] 64; *Western Union Telegraph Co. v. Everheart*, 32 S. W. Rep. [Tex.] 90; *St. Clair v. United States*, 14 Sup. Ct. Rep. 1002; *Smith v. State*, 21 Tex. App. 277; *Ohio & M. R. Co. v. Trapp*, 30 N. E. Rep. [Ind.] 812; *State v. Page*, 12 Neb. 386.)   The argument that this construction of this section of the statute clothes the district courts with great or too much power might have force or effect if addressed to the legislature, the lawmakers; but where the language is as direct and unambiguous in its import as is employed in this section, courts may not construe it and give it a different meaning to avoid a possible difficulty, or abuse of its grant or power.   Moreover, it is not to be presumed that the district courts, or the judges thereof, will abuse any of the powers conferred on them, but rather that they will use them as intended by the legislators.

It is of the assignments that the trial court erred in allowing one of the witnesses called for the state to testify, for the reason that her name was not indorsed on the information.   The name of this witness, as it appeared on the back of the information, was as follows: "Mrs. Fred Steinburg."   The court reporter has given it in his notes "Mrs. Fred Steenburg."   Whether this is a mistake in the spelling of the name by the county attorney in the indorsement on the information or of the reporter we cannot say.   It is not disclosed by the record. But, however this may be, we think the two words may be fairly said to be *idem sonans*.   (See 16 Am. & Eng. Ency. Law 112, and note.)   As an exposition of the doc-

trine of *idem sonans* in regard to names in a warrant we will quote from the decision in the case of *People v. Gosch*, 46 N. W. Rep. [Mich.] 101, as follows: "It is also claimed that the warrant was void for the reason that it did not properly name the respondents. In the warrant the first name of Gosch was spelled 'Amel' instead of 'Amiel,' and the name of 'Brearly' was spelled therein 'Brailey.' This claim is scarcely worthy of notice. The names are *idem sonans.*" The name of this witness, as appears from the record, is "Alena Mary Steenburg," and her husband's name "Paul Fred Steenburg." The statute requires the "names of witnesses" to be indorsed on the information. (Criminal Code, sec. 579.) It is argued that "Mrs. Fred Steinburg" was not the name of the witness, and this being the name written on the instrument was insufficient,—did not fulfill the requirements of the law. It must be said that in a strict sense or meaning this was not the name of the witness. A married woman takes her husband's surname, and by a social custom which so largely prevails that it may be called a general one she is designated by the use of the Christian name or names, if he has more than one, of the husband, or the initial letter or letters of such Christian name or names of the husband, together with the appellative abbreviation "Mrs." prefixed to the surname, and all married women, there may be possibly a few exceptions, are better known by such name than their own Christian name or names used with their husband's surname, and their identification would be more perfect and complete by the use of the former method than the latter. That knowledge of the identity of the witnesses to be produced against him be conveyed to the accused person is the main object to be accomplished by the indorsement of the names of witnesses on the information. This is the aim and purpose of the law by which such act is required. (*Stevens v. State*, 19 Neb. 647; *Parks v. State*, 20 Neb. 515; *State v. Everett*, 45 Pac. Rep. [Wash.] 150.) To comply with the strict letter of the

law the names of witnesses should be indorsed on the information, and it would no doubt be better practice for county attorneys to follow the law as strictly as possible; but we think it allowable to give notice that a married woman will be called as a witness for the state, that her name be indorsed on the information as was the one in the case at bar. It is further urged in this connection that the name of the husband of this witness was "Paul Fred Steenburg" and that the law disregards all Christian names except the first; hence in law the husband's name was Paul Steenburg, and indorsing his surname with the prefixes "Mrs. Fred" was not a compliance with the statutory requirement, because it was not, strictly speaking, her name, nor was "Fred" in law recognized as of her husband's name. The evidence disclosed that the husband was known as "Fred Steenburg," and the wife, in her testimony, when being interrogated directly on this point, stated that her name was "Mrs. Fred Steenburg," from which it appears that the indorsement on the information was of her a sufficient identification, one which met the purpose of the statute, notwithstanding the law does not recognize a second or other than first Christian name. This appellation "Fred" was that by which the husband was known and identified, and it indicated the wife when applied to her in the manner of its indorsement with the other name and term on the information. Had it appeared that the accused were misled and thereby lacked information of one of the witnesses to be produced at the trial by the state, or that any prejudice had in fact resulted to their rights by reason of the form of this indorsement of the witness, a different question would be presented; but this is not even claimed in argument.

It is argued that there was error committed in the admission of the testimony of E. J. Wightman, called as a witness by the state. This witness was cashier of the First National Bank at York, Nebraska, and testified in regard to the manner in which silver moneys were

placed in rolls or packages in said bank and in what amounts, etc. It further appeared in evidence that the money alleged to have been stolen by the accused in the course of the charged burglary consisted in the main of silver and had been sent by the First National Bank of York to the bank which suffered the loss, and in rolls or packages as described by this witness. The evidence of this witness on the subject indicated, if in any sense improper, was but immaterial, and we do not believe it can have been in any degree prejudicial to the accused; hence it furnishes no ground for a reversal of the judgment.

It is urged that the court erred in giving instruction numbered 16 of its own motion. This was an instruction relative to a reasonable doubt. The portion of it to which objection is urged reads as follows: "You are not at liberty to disbelieve as jurors if you believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." A similar instruction, substantially the same as this, was approved in *Barney v. State*, 49 Neb. 515; *Willis v. State*, 43 Neb. 102. (See also *Bartley v. State*, 53 Neb. 310.) In some of the instructions approved in the cases cited there was a variation in the wording from the one in the case at bar and in some the words "if from the evidence" appeared in the one sentence as follows: "You are not at liberty to disbelieve as jurors if from the evidence you believe as men." In the case at bar they were not used, but in other portions of the instructions that all findings or beliefs of the jurors must be from the evidence was strongly stated, and must, we think, have been so impressed on the minds of the jurors that the omission of the words to which we have referred in the particular connection stated could not have misled the jury or worked any prejudice to the rights of the accused. The practical effect of the instruction on the minds of the jurors, when considered in connection with other instructions on the same and other subjects, must have been

as if these words had been inserted in the portion of the instruction where it is urged they should have been.

In the section of the statute defining burglary it is stated: "If any person shall, in the night season, will-fully, maliciously, and forcibly break and enter." Instruction number 4, given in the case at bar, was a statement of the material elements of the crime charged, of which proof was necessary before a conviction could result, and it omitted the word "maliciously" in reference to the breaking and entering. In the instruction it was said of the breaking and entering, that they must be "willfully, feloniously, and forcibly." The words used fully expressed and included the meaning of the word "maliciously," and this being true, the instruction was sufficient. This is within the doctrine approved by this court relative to a statement in a charge of a crime in an indictment, and it is equally applicable to a statement in an instruction descriptive of a crime. (*Whitman v. State*, 17 Neb. 224; *Hodgkins v. State*, 36 Neb. 160; *Wagner v. State*, 43 Neb. 1.) And what was further stated in the opinion in the case last cited is equally applicable here, viz.: "This is especially true in view of section 412 of the Criminal Code, providing that no indictment shall be deemed invalid, nor shall the trial, judgment, or other proceedings be stayed, arrested, or in any manner affected for any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." It follows that the objection to this instruction is unavailing.

The refusal of the court to give an instruction numbered 3, requested by counsel for the accused, is assigned for error. While the precise words of one portion of this instruction were not used in the charge to the jury, its substance and the idea to be conveyed by it were given in effect by paragraphs numbered 9, 10, and 11 thereof.

Of the argument in regard to the refusal to give the requested instructions 7 and 9, it suffices to say that the principles embodied therein, or the essential elements of

the instructions, were included in portions of the charge of the court.

Instruction numbered 8, of the refusal to give which error is urged, was defective, in that it wholly ignored the proposition that the jury must be governed by the evidence, and its refusal was not an error.

In view of the verdict returned there was no prejudicial error in refusing to give the requested instruction numbered 9½.

Instruction numbered 13, requested for the accused, was to the effect that the evidence was insufficient to warrant a verdict of guilty of larceny, and that numbered 14 was, to the same effect, relative to the charge of burglary, and they were properly refused. It is insisted that the evidence was insufficient to sustain the verdict, which must be viewed as one of guilty of the charge of burglary. The evidence was in its nature circumstantial and, when carefully analyzed, is sufficient and satisfactory as to every element charged, and ample to support the verdict. It follows that the judgment of the district court will be

AFFIRMED.