## WEAVER *v.* THE STATE.

1. An indictment for an attempted arson alleged the ownership of the house to be in "Mrs. G. Bevill." On the trial the evidence showed that the deed to the property had been made to Roxie S. Bevill, that she was the wife of G. Bevill, and that Roxie S. Bevill and Mrs. G. Bevill were one and the same person. The jury having found, under proper instructions from the court, that the property belonged to the person named in the indictment, there was no variance, and the court did not err in refusing to grant a new trial upon this ground.
2. Where police officers saw the accused throw oil upon a house for the purpose (afterward admitted) of burning it, and at this juncture the officers came out from their hiding-place and could have been seen by the accused, who then started away from the house without attempting to ignite the oil or the house, the judge properly submitted to the jury the question as to whether the accused desisted on account of having repented or because he had seen the officers and was afraid of apprehension; and a finding against the accused on this issue was not without evidence to sustain it.
3. This court can not say that there was error in refusing to allow a certain question to be propounded to a witness, when it does not appear what answer was expected or would have been made.

Argued October 22, — Decided November 12, 1902.

Indictment for attempt at arson. Before Judge Barrow. Chatham superior court. August 12, 1902.

*W. F. Slater,* for plaintiff in error.
*W. W. Osborne, solicitor-general,* contra.

SIMMONS, C. J. The accused, John J. Weaver, was indicted for the offense of "attempt to commit arson," the allegation in the indictment being that the said Weaver did attempt wilfully and maliciously to burn the house of one Mrs. G. Bevill, and did do a cer-

tain act toward the commission of said crime, to wit, by putting
kerosene oil on said house, but was prevented from executing the
same. From the evidence it appeared that a police officer had received
information which led him to believe that the house referred to in
the indictment was, on the night in question, to be burned. This
officer, with two others, secreted himself at a point about fifty yards
from the house at about the time it was expected the attempt would
be made to burn the house. At about two o'clock in the morning
the officers saw a man who was identified as the accused approach
the house with something in his hand. After going to the rear
end of the house and placing upon the ground the object that he
had in his hand, he walked some distance in the direction of the
place where the officers were concealed, stopped and looked around.
He then walked around the house, and after taking some time, ap-
parently investigating the surroundings, he returned to the place
where he had deposited what then, for the first time, was recog-
nized by the officers to be a can or tin bucket, picked it up, and
poured its contents upon the side of the house. Upon an exam-
ination made shortly after this occurrence, the fluid poured from
the can or bucket upon the house was found to be kerosene oil. Af-
ter throwing the oil upon the house, the accused turned around, and
as he turned the officers emerged from their place of concealment.
It appeared that two negro men were asleep on a bed near the win-
dow on the side of the house where the oil was thrown, and that
some of the oil went through the window and on to this bed. The
officers would not testify whether the accused saw them, but it
appears that he stepped back from the building after throwing the
oil upon it and stopped for about thirty seconds, after which time
he turned and walked away at a rapid walk. When he had gone
some distance the officers determined to catch him. There was a
dim light, and he could be seen by the officers. They supposed
that he had seen them, but did not know that he had. They fol-
lowed him, and when they had come within about forty yards of
him, he threw the bucket or can which had contained the oil into
a ditch and walked on across a near-by bridge. He saw the offi-
cer approaching him, stopped, and was then arrested. He first
gave his name as Carter, and when asked where the bucket was that
he had thrown away, he replied, "It is over there." After going
some distance with the officer without speaking, he said to him:

"I will tell you the truth; my name is John J. Weaver. I am a shoemaker. I know I am ruined. I was hired to do this by Mrs. Roxie Bevill, my niece, wife of Granville Bevill. My destitute circumstances drove me to it. I was to get twenty-five dollars for burning the house. My family is in destitute circumstances;" and at this point he began to cry. He told the officer further that the house was insured for six hundred dollars, and asked him where he was going to take him. When told that he would be taken to the police barracks, he asked to be carried by Mrs. Bevill's house, stating that she would secure a bond for him. It was shown that Mrs. G. Bevill was the wife of Granville Bevill, and that her given name was Roxie. The deed to the land on which the house was situated was to Roxie S. Bevill.

The accused in his statement admitted that he had thrown a half gallon of oil on the side of the house, and that he had been offered twenty-five dollars by Mrs. Bevill to burn the house, but claimed that, after throwing the oil upon the house, "some unknown voice" had told him, "Don't do that." He said further: "I turned around and went back, giving up the idea of burning the house, and was going back to tell her that I would throw up the job. I did not know that there was an officer within half a mile of me — not nearer to me than Frogtown." He also stated that when he stopped, at the time of his arrest, he was in a narrow path, and that he only stepped out of the path to give the officers room to pass; that at the time he did not know that the person about to pass him was an officer, but thought he was a railroad-hand, and did not learn that he was an officer until after he threw his hand upon him and told him to consider himself under arrest.

1. As before stated, it appears that the deed conveying the land upon which was situated the house named in the indictment was made to "Roxie S. Bevill," and that the husband of Roxie S. Bevill is Granville Bevill. The bill of indictment describes the house in question to be "the house of one Mrs. G. Bevill." The question presented for determination by this court is, did the court below err in refusing to give in charge to the jury the following written request of counsel for the accused: "If the State alleges that the defendant attempted to burn the house of one Mrs. G. Bevill, then the State must so prove; and if the facts show the property to be

in the name of another, in that event the defendant should be acquitted;" and in charging instead as follows: "It is necessary for the State to show that it was the house of Mrs. G. Bevill, and the State must so prove. A name is just a simple method of. identi-. fying a certain human being. If the testimony shows that the deed to the property was to Roxie S. Bevill, and if the evidence shows further that Roxie S. Bevill is the wife of Granville Bevill, and if the initial letter of Granville is 'G,' and if the evidence showed that Mrs. G. Bevill was the same person as Roxie S. Bevill, a conviction under this indictment would be good if those facts appeared." The plaintiff in error insists that inasmuch as the deed to the land upon which the house was situated was to Roxie S. Bevill, and the indictment alleged the house to be the property of Mrs. G. Bevill, the request should have been given, and that the charge given was error. We think that the court did not err in refusing to charge as requested, or in the charge as given. It was held by this court in the case of *Jackson* v. *State*, 76 *Ga.* 568, where the accused was charged with embezzlement: " The question is one of the identity of the party whose property was embezzled, and not merely one of the identity of a name." As was said in the opinion in that case, " Neither the court nor the jury could have been at any loss to determine what person was referred to." In the case of *Ansley* v. *Green*, 82 *Ga.* 184, a declaration brought in the name of Alice McPherson Ansley was held good, although the auctioneer's memorandum of the sale of the land, which was set out in the declaration, was in the name of Mrs. Frank J. Ansley as the seller. In that case the court said: " It is very likely that the name in the memorandum was that of her husband; and if that is so, we think it could be explained by parol, and that she would be allowed to show that Frank J. Ansley was the name of her husband, and that the words ' Mrs. Frank J.' were applied to her in the memorandum, and that she was the real owner of the land exposed for sale." In the present case both the State and the accused proved that Mrs. G. Bevill and Roxie S. Bevill were one and the same person, and the court, in the charge complained of, submitted the question to the jury whether this was true. The jury found by their verdict that the house was the house of Mrs. G. Bevill. See *Rogers* v. *State*, 90 *Ga.* 466; Carroll v. State, 53 Neb. 431, 73 N. W. 939; Peterson v. Little, 74 Ia. 223, 37 N. W. 169; Davis v. State (Tex.), 11 S. W. 647.

2. From the statement of facts heretofore given it will be seen that the accused approached the house described in the indictment, at the hour of two in the morning, with a tin bucket or can containing at least a half gallon of kerosene oil. He sets this vessel down in a safe place and carefully goes around the premises, taking in and examining the situation, and returns to the place where he placed the oil. He looks cautiously around, and then throws it over the wall of the house, and in so doing some of the oil goes into a window and falls upon the bedding where two men are asleep. He steps back and listens for thirty seconds, when into full view come three officers of the law. The accused may not have seen them,—he could have done so. He then walks rapidly away, the officers following, and as he goes he throws the bucket in which he had carried the oil into a ditch. After following him for a considerable distance the officers catch up with him and place him under arrest, and after a time he admits all that they have seen, and more. Upon the trial, in his statement made to the jury, do we hear for the first time of his repentance and of the " still, small voice " that bade him desist from his atrocious purpose. Under the Penal Code, § 1040, it was a question for the jury to say under the evidence whether, after throwing the oil upon the house, he was prevented by the sight of the officers from completing his crime, or whether, after going to the extent that he did, he heard and heeded, as he claims, a voice which seemed to say " Stop ! Don't do that ! "; whether he was frightened by the approach of the officers or deterred by the voice of conscience, and repented of his wicked intention. The question was fairly submitted to the jury, they found against the accused, and there was ample evidence to sustain their finding.

3. Complaint is made that the court below erred in refusing to allow a certain witness to answer a question set out in the motion for a new trial. Nowhere does it appear what answer was expected to this question, and, under the repeated rulings of this court, this assignment of error was insufficient.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent, and Candler, J., not presiding.*