[ No. 6665.]

## THE PEOPLE EX REL. ARFMAN v. NEWELL, COUNTY CLERK.

1. **Local Option—Frequency of Elections**—Though a town has, upon an election duly held, refused to become anti-saloon territory, one of the precincts of the county of which the town is a part, may vote upon the question immediately thereafter, without reference to the limitation contained in the statute (Rev. Stats., sec. 4102).—(351, 352)

2. —— **Petition — Signatures — Residence of Voter** — The purpose of the statute (Rev. Stats., sec. 4096) requiring the residence of the voter to be set down opposite to his signature to the petition, is to enable anyone interested in the question to readily ascertain whether, in fact, the voter resides at the address given, and thus prevent fraud.—(353)

The precinct, city or town, post office, county or state, need appear only in the body of the petition. The street and street number may be set opposite the subscribing voter's name, in any case, though the statute requires this particularity only in cities having a population of over 10,000; and though unnecessary in the particular case, they will not, in considering the sufficiency of the petition, be rejected.—(354)

Where the signature of the first subscriber is followed by words indicating the street and number of his residence, ditto marks thereunder, opposite the names of the subsequent subscribers, are a compliance with the statute.—(354-357)

The signature of the subscribers to the petition, and their residences as therein set down, are under the statute (Rev. Stats., sec. 4096) to be taken as true, where no evidence to the contrary is presented.—(355)

3. **Abbreviations**—Under a statute requiring the residence of each subscriber to a statutory petition to be "written" opposite his signature, ditto marks, opposite his signature, and under a street or street number, set above, is a compliance with the statute.—(357)

And abbreviations, it seems, may be used, as "sec." for "section."—(352)

*Error to Boulder District Court*—Hon. HARRY P. GAMBLE, Judge.

Mr. ERNEST MORRIS for plaintiff in error.

Mr. Halstead L. Ritter and Mr. Hamlet J. Barry for defendant in error.

Mr. Justice White delivered the opinion of the court:

Defendant in error is the county clerk and recorder of Boulder County. September 29, 1908, there was filed in his office a petition to have submitted to the qualified voters of precinct 24 in that county, at the November election next ensuing, the question whether the precinct should become "anti-saloon territory" under the "local option act" of 1907. The county clerk approved, and accepted, the petition, and was about to place the proposition upon the ballot, when John Arfman, as relator, made application to the district court for a writ of certiorari, directed to the county clerk, to review his action in approving, and to prohibit him from accepting, and acting upon, the petition.

The reasons alleged in the complaint why the county clerk should be prohibited from receiving the petition and acting thereon, were: (1), That a portion of the territory embraced in precinct 24, to wit, the town of North Longmont, a municipal corporation, had, at a town election held therein, in April, 1908, voted not to become anti-saloon territory, and twenty-three months had not elapsed since such vote; (2), That, in the petition, "no residence addresses are written opposite any of the names contained therein, and that none of the names purported to be signed to said petition are valid, and none thereof should be counted * * * in considering said petition"; (3), That the petition "fails to state a number of dates when some of the purported signers signed" the same.

The writ was granted, and a return thereto made. Upon consideration, the court dismissed the

application, and entered final judgment against plaintiff. The relator prosecutes this writ of error, to have the action of the trial court reversed.

1.   Section 4102, Rev. Stats. 1908, provides, in substance, that when the electors of any political subdivision of the state determine by popular vote whether a given political subdivision shall become anti-saloon territory, or having, by such vote, reversed its decision creating anti-saloon territory, the vote thereon "shall be a bar to the submission to the voters thereof of either of such propositions as applied to that identical political subdivision or district only, until after the lapse of twenty-three months." By virtue of this provision, it is contended that the election in April, 1908, precluded the voters of the town of North Longmont from voting upon the proposition at the November election following, notwithstanding precinct 24 is one political subdivision and the town of North Longmont quite another, although included in the former.

The question is not debatable. It has been determined contrary to the contention of plaintiff in error. In *Schwartz v. People,* 46 Colo. 239, 281, we expressly held that, though a precinct in a given ward may refuse to become anti-saloon territory, the ward of which the precinct is a part may, nevertheless, immediately thereafter, without reference to the twenty-three months' limitation, vote upon the question of becoming anti-saloon territory, and, if the vote be in the affirmative, the "ward thereupon becomes anti-saloon territory throughout its entire extent, covering the included precinct; because it is expressly provided that, when any subdivision votes to become anti-saloon territory, it becomes wholly so."

We now hold that, notwithstanding the town of North Longmont refused, in April, 1908, to become anti-saloon territory, precinct 24, of which the mu-

nicipality is a part, had the legal right, if properly initiated, to vote at the election in November following, upon the question of becoming anti-saloon territory. Under the facts of this case, the twenty-three months' limitation has no application. The voters of a distinct political district, though it contains all, or a part, of a lesser political subdivision, or is a part of a greater one, are in no sense the voters of identical political subdivisions.

2. Section 4096, Rev. Stats. 1908, declares that a petition for submission of the proposition to create anti-saloon territory "shall be substantially in" a certain given form. In the prescribed form following the body thereof appears the headings: "Name of Signer ........... Street Number ........... Date of Signing ............"

In the petition before us, under the heading, "Street Number," and opposite the first name on the petition, appears a number, followed by a name, to wit, "533 Pratt." In the same column, and opposite other names, appear ditto marks, also other numbers, and names, beneath which, and opposite signature names, appear ditto marks. In this column, and opposite other signature names also appear, in some instances, the abbreviation, "sec.", or the word "section," with a number written thereafter.

Section 4096, *supra,* requires, among other things, that the petition be signed by qualified electors in their own proper persons only, and opposite the signatures of each one his residence address shall be written, and the date of signing the same, and that no signatures shall be valid or be counted in considering such petition, unless these requirements are complied with.

The section further requires that, in cities having a population of over ten thousand, the street and number of such residence shall be written, and it is

said that, as no city is involved having over ten thousand inhabitants, the street and number, if it be assumed that the figures and words appearing in the petition in question are such, are entirely unessential, are mere surplusage, and should not have been written opposite the respective names. It is, therefore, contended that, since no name of any city, town, village, post-office, or of any county or state, is written opposite any signature upon the petition, the same contains no residence addresses, and is, therefore, fatally defective and void.

If we eliminate the figures and words appearing under the heading, ''Street Number,'' or exclude the ditto marks under the heading as not constituting a residence address, within the meaning of the section, the petition is wholly insufficient, and the county clerk was without authority to order an election, and none could be legally held.—23 Cyc. 95.

In considering this matter, it is essential to keep in mind the purpose of the law in requiring the residence address to be written opposite each name, and, likewise, the fact that the petition must be considered as a whole, and that the form thereof is prescribed by the section. The purpose of the law in requiring the residence address to be written opposite each name is, to enable one desiring to question the sufficiency of the petition to readily ascertain whether the signer actually lives at the address given, and thus to prevent fraud. A material distinction may exist between one's post-office address and his residence address; the former is where he receives his mail; the latter, where he resides. The residence address may be ''The Elms,'' ''Wolhurst,'' ''Sagamore Hill,'' ''523 Pratt,'' or any term one may select and use for that purpose.

The petition under consideration shows, *prima facie*, that certain qualified electors signed their

(23)

names and wrote after their names in a certain column designated "Street Number" certain figures and words, or a word or words followed by figures. Nowhere upon the prescribed form of the petition, except in the body thereof, does it appear necessary to write either the name of the precinct, the city, town, post-office, county or state. It is true that, in the addresses written in the petition, street and numbers are required only in cities having a population of over ten thousand, yet the law does not, in any case, prohibit their use, and the prescribed form of the petition seems to authorize their use in all cases. Under these circumstances, we cannot assume that their use in the petition in question is surplusage. We cannot take judicial notice of what constitutes a correct residence address. Under the circumstances of this case, we must take the petition, examine it, and determine therefrom, under the law, whether it is sufficient. The law requires that, at the bottom of the petition shall be appended an affidavit, signed and sworn to by a qualified elector of the subdivision in which the signer thereof resides, stating that the signatures on the petition are genuine; that, to the best knowledge and belief of the affiant, the persons so signing were, at the time of signing the petition, qualified electors of the political subdivision in which the vote is to be taken; that their respective residences are correctly stated in the petition, and that each signer signed the same on the date set opposite his name. The act also declares that any person wilfully and corruptly swearing falsely to such statement shall be guilty of perjury.

Bearing in mind these provisions of the law, and directing our attention to the petition, it appears therefrom that it is in exact form prescribed by law; that there are a sufficient number of names thereon; that there is, opposite the name of each signer, in

the column prescribed for that purpose, what purports to be a residence address, or, at least, ditto marks under such address.

The body of the petition clearly shows that precinct 24 is situated in the county of Boulder, and state of Colorado; that each of the persons signing the petition resides in that particular precinct. Upon this petition, the signer has written certain words as his residence address, under the heading prescribed, and thereby says such is his residence address. The affidavit, made subject to the penalty of perjury, says that the address so written is such signer's correct residence address. The petition was the only evidence upon this question, and we must presume that the figures and words opposite the respective names are the correct residence addresses of the signers of the petition.

But for another stronger and more conclusive reason, we must hold this petition invulnerable to the objection urged. Section 4096, *supra,* expressly declares that "such petition, so verified, shall be *prima facie* evidence that the signatures, statement of residence, and dates, upon such petition are genuine and true, and that the persons signing same are qualified electors of the political subdivision named." There was no evidence whatever to overcome the *prima facie* case made by the petition under the law, and the only question left for determination is, the effect of the ditto marks used, in some instances, in writing the residence address, and, likewise, in the dates of signing the petition. We will consider this question under subdivision 3.

3. It is contended that, as the law expressly requires that the date of signing the petition, as well as the residence address, shall be written opposite each signature, the use of ditto marks was not a compliance therewith.

"Writing," Webster says, "is the act or art of forming letters and characters on paper, wood, stone or other material, for the purpose of recording the ideas which characters and words express, or of communicating them to others by visible signs; anything written or printed; anything expressed in characters or letters." Therefore, any symbols or characters in general use in communicating the ideas which characters and words express, and generally recognized for that purpose, are sufficient, and constitute writing within the meaning of the word.

In *Hughes v. Powers,* 99 Tenn. 480, cited by plaintiff in error, the use of ditto marks upon public records, while not commended, is recognized, and it is there declared that such marks are to be read as a repetition of what appears on the line above them. Such marks are as much a part of the English language as are punctuation marks. They are often given an important, and sometimes a controlling, part in the construction of general writings, and in the interpretation of legal documents, statutes and constitutions, and being regarded as a part of the language, the court will, of course, take judicial notice of their meaning. — Words and Phrases, vol. 3, p. 2141.

The only other case cited by plaintiff in error upon this feature of the case, is *Haack v. Theise,* 99 N. Y. 905, in which the residence of a creditor in a bankruptcy schedule was indicated by ditto marks intended as a duplication of the statement of the residence next above. The question was, whether the requirements of the bankruptcy act had been sufficiently complied with so that the debt so "scheduled" was released by the bankrupt's discharge. The court held that there was not a compliance with the law, saying: "The resort to ditto marks in attempting to indicate the plaintiff's residence, is in violation of

both the letter and the spirit of the act." The doctrine of this case is not applicable to the case under consideration. The bankruptcy act there under consideration, authorized the supreme court of the United States to make rules in reference to the forms of procedure, and that court had promulgated a rule, which was in force at the time of the rendition of that decision, to the effect "that all petitions, and the schedules filed therewith, shall be printed or written out plainly, without abbreviations or interlineations." Abbreviations or ditto marks to designate the residence addresses, or dates of signing of the petition under consideration, are not prohibited by law. Neither does the act require that such addresses and dates of signing be written in old English script, Spencerian penmanship, or schoolboy vertical. The act requires only that they be written, and we think the facts of this case show that they were written within the meaning of the law.

The writ of certiorari empowered the court issuing it to determine only whether the county clerk had regularly pursued the authority vested in him in accepting, and acting upon, the petition. That court, upon the case presented, decided that the defendant in error was not exceeding the authority vested in him in that respect, and we think the conclusion was right.

The judgment is, therefore, affirmed.

*Affirmed.*

Decision *en banc*.

Mr. JUSTICE GABBERT dissenting.

Mr. JUSTICE CAMPBELL not participating.

Opinion filed July 6, 1910; rehearing denied February 6, 1911.

Mr. Justice Gabbert, dissenting:

A petition to submit the question contemplated by the local option act is a jurisdictional prerequisite. Without such petition, sufficient on its face as to form and signatures, the clerk has no authority to order the question submitted of whether or not a designated political subdivision shall become "anti-saloon territory"; and where the statute on the subject prescribes the form of the petition and what it shall contain, it must be exactly followed in all particulars. — Black on Intoxicating Liquors, § 93; 23 Cyc. 96.

No presumption can be indulged in favor of such petition. It must exhibit on its face what the statute requires shall thereby be made to affirmatively appear.—*Talley v. Grider*, 66 Ala. 119. Our statute prescribes the form of the petition, and requires that, opposite the name of each one signing it, his or her residence address shall be written, and also the date the signature was appended. The statute further provides that "no signature shall be valid or be counted in considering such petition unless these requirements are complied with, and unless the date of signing is not more than ninety (90) days preceding the date of filing the same." The statute also provides that the number of signers shall not be less than a fixed per cent. of the total vote in the political subdivision named cast at the last preceding general election therein.

There is a reason for these requirements. None but qualified electors of the territory in which the question is to be submitted can sign it. The statute prescribes the heading to the petition, which must recite, in substance, that the undersigned qualified electors of a designated political subdivision petition that the question of "Shall the subdivision named

become 'anti-saloon territory'?'' be submitted to the electors of such territory. It was not regarded as sufficient that the heading be to the effect that the signers were qualified electors of the subdivision named, but, in addition, there must be written opposite each signature the residence address of the person so signing. This had a double purpose: (1) To show affirmatively, for the information of the clerk, that each person so signing is an actual and *bona fide* resident of the subdivision named in the heading to the petition; and (2), by giving the residence address in the manner prescribed, an opportunity is afforded all interested to ascertain whether or not there is such person, or whether or not he is a qualified elector of the subdivision involved, and thus determine whether the petition was signed by the requisite number entitled to sign it. It will not do to say, in the face of the express provisions of the statute on the subject, that by writing opposite a signature a street number, or the number of a section, and nothing more, that thereby it appears by intendment, because of the heading, that the person opposite whose name such an address is written is a resident of the subdivision designated in the heading. The plain provisions of the statute inhibit indulging in any such presumption. No. 530 Gay Street, or Section 33, may be in some other city, or in some other totally different territory, than that mentioned in the heading. Of course, it may be in the territory described in the heading to the petition, but that is not enough. It must affirmatively appear, in the manner the statute prescribes, that it is. Suppose the statute had been complied with on the subject under consideration by writing the residence address as it requires, and it appeared that any street number given in the petition was the num-

ber of a street in the city of Boulder—it would certainly not be contended that the person opposite whose name such a residence address was written was qualified to sign the petition. To prevent the necessity of resorting to conjecture, to prevent fraud, and make it *prima facie* appear on the face of the petition that it is signed by the requisite number entitled to sign it, the statute intended that it should affirmatively appear, in the manner prescribed, that each signer was a qualified elector of the territory designated in the heading of the petition, to the extent of the number required.

The petition in the case at bar fails to show this, and so was wholly insufficient for the clerk to act upon, further than to refuse to receive it.

In the face of the statute requiring the residence address and dates of signing to be written, ditto marks are not a compliance with this requirement. If the statute had said such addresses and dates should be designated, there might be some force in saying that ditto marks could be employed in the way they were. Ditto marks mean the same as that immediately preceding them. But where the statute says residence addresses or dates shall be written, it means that they shall be designated by such letters and characters as will indicate them of themselves, and not by reference to something preceding.

There is also a reason why the date any signature is appended should be written, because no signature can be counted which was appended more than ninety days preceding the date the same was filed with the county clerk; hence, it becomes important that the date should be designated in a manner which speaks for itself, and not by reference to something else.

The affidavit referred to in the main opinion does not cure the defects of the petition. The stat-

ute requires that the affidavit shall state that the signatures on the sheet to which it is appended are genuine; that, to the best knowledge and belief of the affiant, the persons so signing it were, at the time of so doing, qualified electors of the subdivision involved; that their respective residences are correctly stated therein; and that each signer signed the same on the date set opposite his name. It is only when an affidavit containing these statements is made and attached to a petition which conforms to the law that the petition becomes *prima facie* evidence that the signatures, statements of residence, dates, and so on, are genuine and true, and that the persons signing are qualified electors of the political subdivision named; but when the petition to which such an affidavit is appended is wholly insufficient by reason of its failure to properly designate the residence addresses and dates when signed, the affidavit adds nothing to what the petition itself must show, because the affidavit can only make the petition *prima facie* evidence of what the statute says it shall exhibit.

The law, as written, should be observed, otherwise it is of no benefit. Its mandate should not be avoided by a construction which is clearly contrary to its provisions. The judicial has no authority to say to the legislative department that the laws which it has enacted mean something different from that which, in clear and unmistakable terms, they express.

Inasmuch as the petition is wholly insufficient for the reasons stated, it is unnecessary to express an opinion on the question of whether or not the limitation imposed by section 9 of the local option act has any application.

The judgment of the district court should be reversed.