No. 16,131.

CASE ET AL. *v.* MORRISON, SECRETARY OF STATE ET AL.

(197 P. [2d] 621)

Decided September 16, 1948.

Mr. HARRY A. KING, Mr. E. B. EVANS, for plaintiffs in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr.

DUKE W. DUNBAR, Deputy, Mr. CHAS. F. CORY, Assistant, for defendant in error Morrison.

Mr. O. OTTO MOORE, Mr. ARNOLD R. GILBERT, for other defendants in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

THIS action concerns the sufficiency of a petition to initiate an amendment to the Constitution, filed by plaintiffs in error, sponsors thereof, with defendant in error Walter F. Morrison as secretary of state. After a hearing on the protest lodged against the petition by the other defendants in error, many of the subscribed names, as will more fully hereafter appear, were stricken from said petition, thereby reducing the number below that required in order that the proposed amendment be placed upon the ballot at the ensuing election. By appropriate proceedings in the district court the action of the secretary of state was approved and judgment entered accordingly. We are asked to reverse this judgment upon several grounds, only two of which we deem it necessary to consider.

By written stipulation of the parties all of the essential facts have been agreed upon.

There appeared upon said petition 56,904 signatures; it was agreed by the parties that 49,386 signatures are required in order that the measure be placed upon the ballot; 10,342 names were stricken from the petition—by the secretary and the trial court—leaving 46,562 valid signatures, which resulted in rendering the petition deficient by 2,824 signatures.

Included in the names so stricken from the petition were those of 1210 women who signed their husband's names or initials preceded by the abbreviation "Mrs." rather than their individual given names. These names

were stricken for the reason, as stated, that such persons did not sign the petition "in their own proper persons only" as provided by section 1, article V, of the Constitution.

It is not claimed that said signers were not qualified electors and legal voters, and there is no showing that they could not be located or identified by the names signed. It was expressly stipulated that the objection was sustained solely because of the form in which such signatures appeared, and that "in many instances the signature of another using the same address would appear on the same section of the petition, (example, Mrs. G. W. Jones—1020 Emerson St., followed by G. W. Jones, 1020 Emerson St.,)."

■ Section 1, article V, of the Constitution, provides in part, as follows: "Such petition shall be signed by qualified electors in their own proper persons only, to which shall be attached the residence address of such person and the date of signing the same." In construing this provision we have held that the requirements thereof are fully satisfied when the petition is signed "by a person representing himself to be identifiable by the name signed to the petition * * *." *Brownlow v. Wunch,* 103 Colo. 120, 123, 83 P. (2d) 775.

■ The use by married women of the prefix "Mrs." with their husband's christian name or his initials, followed by his surname, as a means of identifying themselves, is quite universally recognized and constitutes a "social custom which so largely prevails that it may be called a general one." *Garrell v. State,* 53 Neb. 431, 73 N.W. 939.

In *Michigan State Dental Soc. v. Secretary of State,* 294 Mich. 503, 293 N.W. 865, 869, in determining the sufficiency of a referendum petition, the court said: "Signatures of married women who sign their husband's given name or initials with the prefix 'Mrs.' should also be accepted. * * * Our constitution does not prescribe what form the signature must take and, in the absence

of any statute to the contrary, the prefix 'Mrs.' followed by the husband's name is sufficient."

In *Ley v. Dominguez*, 212 Cal. 587, 299 Pac. 713, 717, the court observed what is equally pertinent here, that:

"Signatures by married women who signed what respondent clerk assumes are their husbands' given names or initials, with the prefix 'Mrs.' As to these signatures the respondent found affidavits of registration executed subsequent to January 1, 1930, by persons with the same surnames as shown on the petitions, and from the same addresses. In each case, in addition to a woman being registered from the address given on the registration affidavit, there was a man with the same given name or initials as was used by the woman in signing the petitions. In other words, the situation is one where a married woman, at the time of registering, signed her own given name, as required by law, but, in signing the petitions, used the given name or initials of her husband. There is nothing in the charter provisions or in the general law that requires a married woman to sign a petition of this nature with the same given name as was used by her at the time of registration. The charter merely requires that the petition be signed by registered qualified electors, and is silent as to the form the signature must take. Thus, in *Conn v. City Council*, 17 Cal. App. 705 [121 Pac. 714], it was held that a person could sign a petition, using the initials of his given names, although, when he had registered, he had used his full given names.

"In this regard the respondent clerk has the duty of examining the signature on the petition and comparing it with the signature found in the registration records. This can be done by an examination of the handwriting and the surnames. The question is simply one of identity. If reasonably satisfied by such examination that the two signatures are those of the same person, they should be approved, regardless of the given name or initials that are used."

It is made the duty of the general assembly by section

11, article VII of the Constitution, to pass laws "to secure the purity of elections, and guard against abuses of the elective franchise." If the signing by a married woman of her husband's name preceded by "Mrs." constitutes an abuse of the elective franchise, the remedy lies with the legislature and not with the courts. The fact that the general assembly has not designated the manner in which married women may sign petitions would indicate that it did not consider that signatures, as above set forth, are improper or that they should be stricken from initiative petitions. We conclude that the trial court· erred in striking such names from said petition.

██ Also included within the number stricken from said petition were 1912 names which were excluded because of the failure of signer to insert after his signature, under the caption "residence address (street and number, if any)," any information relating to the signer's address, in towns admittedly having no named streets or house numbers, even though the signer inserted in the following column under the caption "city, town or post office" the name of the town in which he resided. With respect to this question it was stipulated between the parties, as follows: "An example of the names so stricken follows: in the column designated 'Signature of Elector' appears the name John Doe. The column designated 'Residence Address, (Street and Number, if any)' opposite the name of the signer was blank. In the column designated 'City, Town, or Post Office' opposite the name of the signer appeared the name of a town, such as Swink, Orchard, Vona, Radium, Crook, and innumerable others. The date of signing appeared in the last column provided therefor. There was no evidence offered before the Secretary relating to the objection of protestants to these signatures and the said objections were sustained by the Secretary upon the sole ground that the signer had not adequately described his residence address. The Secretary did not strike names of electors from the petition wherein the

name of the town was set forth in the second or 'Residence Address' column where the town was one which the parties had stipulated did not have named streets or numbered residences within its corporate limits."

Section 1, article V, of the Constitution, provides for the signing of a petition for initiated measures by qualified electors to whose signatures "shall-be attached the *residence address* of such person and the date of signing the same."

Section 6 (3), chapter 86, '47 Supplement to '35 C.S.A. (S.L. '41, p. 483), provides, inter alia: "All initiative and referendum petitions shall be signed by qualified electors in their proper persons only, to which shall be attached the residence addresses of such persons, *including street and number, if any,* and the date of signing the same. * * * "

The Constitution does not define "residence address" and the above statute requires the insertion of street and number only when the signer resides upon a named street in a numbered house in a city or town.

Counsel for defendants in error rely upon three cases, which it is claimed, support their contention: *People ex rel. v. Newell,* 49 Colo. 349, 353, 113 Pac. 643; *Elkins v. Millikin,* 80 Colo. 135, 138, 249 Pac. 655; *Haraway v. Armstrong,* 95 Colo. 398, 400, 36 P. (2d) 456.

In *Elkins v. Millikin, supra,* at page 138, we said: "As to the second question, we are all agreed that the careful entry of the residence (not mere post office address) of each person with each name should be made at the time of the signing thereof, and should show, in all cities and towns *where there are street numbers,* the street number of the residence of the signer, in accordance with section 29."

In *Haraway v. Armstrong, supra,* it is said: "The purpose of the required data, as we perceive, is that those interested in protesting may be apprised of that which will enable them conveniently to check the petition."

In *People ex rel. v. Newell, supra,* at page 353, we

said: "In considering this matter, it is essential to keep in mind the purpose of the law in requiring the residence address to be written opposite each name, and, likewise, the fact that the petition must be considered as a whole, and that the form thereof is prescribed by the section. The purpose of the law in requiring the residence address to be written opposite each name is, to enable one desiring to question the sufficiency of the petition to readily ascertain whether the signer actually lives at the address given, and thus to prevent fraud. A material distinction may exist between one's post-office address and his residence address; the former is where he receives his mail; the latter, where he resides. The residence address may be 'The Elms,' 'Wolhurst,' 'Sagamore Hill,' '523 Pratt,' or any term one may select and use for that purpose."

We are convinced, in view of the foregoing, and in the absence of evidence to the contrary, that the signer of a petition adequately describes his residence address by the insertion in said petition, of the name of the town in which he resides, such as Swink, Orchard, Vona, Radium, and Crook. By inquiry at those places it could be readily ascertained whether or not the signer actually lives at the address given, and thus satisfy all the requirements of the statute. The fact that the residence address of the signer is given under the caption "City, Town or Post Office" instead of under the caption "Residence Address (Street and Number, if any)" is of little moment since the petition must be considered as a whole.

There is nothing in the Constitution, statutes, or decisions justifying the rejection of signatures solely by reason of the failure of signers, under the circumstances prevailing, to insert in the petition, streets and numbers of their residences.

We conclude that the petition contains sufficient valid signatures to place same upon the ballot at the ensuing

election, and that the 3122 stricken names should be restored to the petition.

The judgment of the trial court is accordingly reversed, and the cause remanded with instructions to place the measure upon the ballot.

MR. JUSTICE HILLIARD and MR. JUSTICE LUXFORD dissent.