[No. 6994.]

## ADAMIC v. THE PEOPLE.

1. **Local Option—Petition**—A petition for the submission of the question whether a certain territory shall become "anti-saloon territory," addressed to the proper county clerk by his title, is sufficient though not addressed to him "as" county clerk. —(548)

2. **——Verification**—A petition upon a single sheet, formed of several sheets pasted together, with the proper affidavit at the bottom, was held a compliance with the statute, there being nothing to show that the sheets were signed separately, or that the verification was not taken as there appeared.—(548, 549)

3. **—— Residence of Petitioners —** The residence of a petitioner, and the date of signing, is sufficiently indicated by ditto marks under the proper word, written above, opposite the name of another subscriber.—(549)

4. **——Election—New Precinct—**An election may be called in a precinct organized since the last election. The county clerk, when a petition for an election in such precinct is presented, should determine how many votes were cast at the last election, by persons then residing in the territory composing the new precinct, regardless of whether such votes were cast in the same, or in other then adjoining precincts.—(550-553)

He may determine this, and that more than fifty per cent. of the electors residing in the new precinct, who voted at the last general election, have subscribed the petition, by reference to the poll books, and other testimony.—(552)

The petition itself may be accepted as prima facie evidence. —(551)

5. **——Second Election—New Precinct—**Part of an incorporated town may be included in an election precinct, with other territory not within the town limits, and at a great distance therefrom, and the precinct so formed may vote to become anti-saloon territory, though the town, at a municipal election held within a year, had rejected the proposition.—(553, 554)

*Error to Fremont County Court*—Hon. JAMES L. COOPER, Judge.

Mr. JOSEPH H. MAUPIN and Mr. J. G. SCHWEIGERT for plaintiff in error.

Hon. JOHN T. BARNETT, attorney general, and Mr. JAMES H. TELLER, assistant attorney general, for the people.

Mr. JUSTICE HILL delivered the opinion of the court:

The plaintiff in error was convicted on the charge of selling intoxicating liquors in anti-saloon territory, and brings the case here for review upon error.

The prosecution was based upon the statute commonly known as the Local Option Act, approved March 25, 1907. The record shows, that the defendant conducted a saloon in the incorporated town of Prospect Heights, in Fremont county; that the electors of that town, at its municipal election held on April 7th, 1908, voted upon the question: "Shall this town become anti-saloon territory?" The result was in the negative.

On July the 8th, 1908, the board of county commissioners of Fremont county reconstructed the boundary lines of several county voting precincts, including the one which the entire town was theretofore located in. This placed a part of the town, including the defendant's saloon building, in precinct No. 20, which was made up of fractional parts of former voting precincts. This new precinct, as then constructed, consisted of a part of the incorporated town (which had voted upon the question at the preceding April city election), also considerable area of country district which had not theretofore voted upon the question. At the general election held November 3rd, 1908, this new precinct voted upon the anti-

saloon territory question; the result of this election, if lawful, made of this precinct anti-saloon territory.

It stands admitted that the defendant made the sale for which he was convicted, but his contention is that the territory in which his place of business is situate had never become anti-saloon territory, for reasons hereinafter referred to.

The first assignment urged is the insufficiency of the title to the petition presented to the county clerk calling for the submission of this question. It is claimed, it is not in compliance with the statute which says it shall be addressed to the county clerk. The address upon this petition was as follows: "To Geo. P. Nix, County Clerk & Recorder, clerk of the County of Fremont in the State of Colorado." It is urged, that an instrument thus signed would not convey title to real estate; that the requirements concerning such provisions are mandatory; that the words "County Clerk & Recorder," etc., are merely descriptive to the official Mr. Nix, and that inasmuch as the word "as" does not follow the word "Nix," the petition is totally defective. The purpose of the statute is plain. It is not claimed that Mr. Nix was not the county clerk or that the election was not called by the county clerk; when presented to him as such, and when he accepted it and acted upon it as such, there seems to be no reasonable ground for asserting that the petition is defective in this respect.

Second; it is claimed that an examination of the petition will show that only one affidavit was taken and attached to the several sheets of paper, in disregard of the requirements necessary, to wit, "an affidavit at the bottom of each sheet." It is further urged that the affidavit does not appear at the bottom of any one of the sheets, but appears upon the last one at the end of all of the sheets so pasted together.

Counsel urge that this is an absolute violation of the express mandate of the statute.

We find nothing in the act which requires that a petition should consist of several sheets of paper. From an examination of this petition it discloses that the names of the signers are all upon one paper, and at the bottom thereof is attached the verification as required by law.  'Tis true, this one sheet consists of several different pieces of paper which appear to have been pasted together so as to form but one sheet as a, whole, and it appears to have been executed as one sheet with the affidavit at the bottom thereof.  In the absence of any showing that they were signed upon separate sheets or that the verification was not taken as the instrument purports to show, we find nothing to sustain the claim that the law was not complied with in this respect.

The third objection pertains to the description of the place of residence of the signers of the petition. It is claimed that certain citizens mention only their street address, also that the petition does not show that the signers were residents of the precinct.  In this connection, it is also urged that the name of the street was given only in a few cases and that the same is true of the date of signing; as to others the streets and dates are indicated by ditto marks.  These ditto marks, counsel assert, cannot be construed as a compliance with the statute, which requires the residence and date to be written opposite the name.  These identical questions were given consideration in the case of *The People ex rel. John Arfman v. Olney Newell, etc.*, as clerk of the county of Boulder, state of Colorado, *ante,* 349, wherein they were decided adversely to the contention of the plaintiff in error. The reasons there given by Mr. Justice White are a complete answer to the contention of counsel here, upon the same questions.

It is earnestly urged that no valid election could be held in this new precinct 20 at the time it was attempted, for the reason that it had but recently been created, and no previous general election having ever been held in it, hence, no vote had ever been cast in such political subdivision at the last general election therein, as contemplated by section 2 of the act which provides that, ''the signatures of qualified electors of any political subdivision in number not less than forty per cent. of the total vote cast in such political subdivision at the last general election therein.'' Standing alone, section 2 of the act might consistently be given the construction contended for, and from its language counsel urge that it must have been intended by the legislature that this question could only be submitted in political subdivisions that were in existence at the general election preceding the one upon which the vote is to be taken, and in case a precinct was not in existence at the preceding general election, for that reason it was not intended that this question should be submitted at the first general election after its creation and, therefore, under the act, the petitioners were precluded from having it submitted at the election which they did. It is urged that this position is in harmony with its rational construction, for the reason that it then leaves a basis upon which the county clerk may determine as to what constitutes this forty per cent., namely, from the abstract of the canvassers upon the vote cast at the preceding election, as shown by the records on file in his office. It will be noted that this section does not state the manner in which the county clerk shall ascertain this fact. It does not state *as shown by the returns in his office,* nor in any manner provide the method whereby the county clerk shall make his findings upon this subject.

Further, it will be noted that the exception contended for by counsel, namely, that it cannot be sub-

mitted in such a precinct, is not so stated in the act. When we turn to section 1 of the act, which includes the definition of terms employed in it, we find it states:

" 'Election' shall mean any general election at a time fixed by law for choosing county, city or town officers, as the case may be; and in no case shall it mean a school election or a special election to fill a vacancy."

Thus, we find in this definition what is meant as the elections at which this question can be submitted and the elections at which it cannot be submitted.

Coming to section 2, we find it provides:

"Sec. 2. Upon the filing in the office of the clerk at least thirty days before *an election* of a petition as in this Act provided."

By reading this in connection with section 1, where the definition of an election is set forth, we conclude that it was intended to mean that this question could be submitted at any election, as defined in section 1 of the act, except as where otherwise prohibited in the act by a direct expression upon that question.

Following this, it is provided in section 3 that the petition, when verified, shall be *prima facie* evidence that the persons signing the same are qualified electors of the political subdivision named; so that upon that question the clerk has a right to accept this fact *prima facie* as true, without further investigation, unless some showing is made to the contrary.

Following this, in section 4, it is provided the clerk with whom *any* petition shall be *filed as provided in this act* shall cause notice to be given in the manner provided by law for giving notice of an election of the submission of said proposition at the *next* election, etc.

Section 5 provides the manner of placing the question upon the ballot, etc. Then when we turn

to sections 7, 8 and 9 we find they provide the system how and when the question shall be resubmitted for the purpose of deciding whether or not the same territory shall reverse itself upon the question. In section 9, we find the only bar to when either of the questions shall not be submitted in the *same identical territory,* which, it states, shall not be done until after the lapse of twenty-three months. Passing on to section 14, we find a specific exception pertaining to sale by druggists under certain conditions.

Construing the act as a whole, it will thus be seen that the manifest intent was that the clerk should determine how many votes were cast at the last election by persons then residing in the territory covered by the new precinct created since that election, regardless of the fact that such votes were cast at certain polling places in this or in any other then adjoining precincts. Therefore, when the clerk, as he stated in this case, by reference to the poll books and otherwise, determined that more than forty per cent. of the electors residing in precinct 20, who had voted at the last general election, had signed this petition, he had determined the fact in a lawful manner; to hold otherwise, is to say that this question (which was evidently intended to be favored) can never be submitted in a newly formed precinct until after there has been held therein a general election.

In this case, it is not claimed that the petition did not have the requisite number of signers; that question is not raised, and there is no reason to suppose the legislature intended that the law should be administered so as to prevent the fulfilling of its purposes. Another very potent reason why the construction contended for was never intended, is the fact that if that rule was to prevail, the board of county commissioners of any county, did they so desire, could prevent the submission or resubmission of the ques-

tion at any election. To accomplish that result, it would only be necessary to reform precinct boundaries after each general election. The slightest change therein would make it impossible to obtain a legal petition.

The next question urged refers to the inclusion of a part of an incorporated town within a voting precinct, which extends over a large area not within such town or within one mile of the boundaries thereof. Counsel contend that a consideration of the entire Local Option Act is convincing that it was the intention of the legislature to confer upon incorporated towns a Local Option Act, thus to enable each incorporated town to say, for itself, what its policy shall be with reference to the sale of intoxicating liquors within its boundaries. To support this contention, they quote that portion of section 1 which defines towns.

Further, they contend that if this conviction be sustained, it must result in the anomaly of having voters not at all interested in the internal affairs of the town, deciding for the town the question of its internal management, including the question of the revenue to be derived from the proceeds of license fees for the support and maintenance of the town, thus directly affecting the amount of taxation that may be required to support and maintain it, and this by voters far removed, some in this case as much as twelve miles away from the town. And, further, if this is allowed, that it makes the execution, effectiveness and operation of the ordinance of the town depend upon officers, to wit, county commissioners, having no constitutional or other authority to legislate for the town, in this, that by changing precinct boundaries to include parts of the country and parts of the town, this result would follow.

We have nothing to do with the wisdom or pro-

priety of the act. It is true, the legislature might have provided for local option within towns and cities as separate from the county, and have allowed the people therein to legislate upon such matters in their own way without dictation from those living without their limits, but the act reads otherwise, and, however unreasonable or unjust this portion of the act may appear to some, this argument is one to be made to the legislature, and not to the court. This question is not debatable in this jurisdiction, it has twice heretofore been determined contrary to the position urged by the plaintiff in error.—*Schwartz v. The People,* 46 Colo. 239; *People ex rel. v. Olney Newell, etc., ante,* 349.

Under the record here presented, the judgment could not have been otherwise than it was; it is, therefore, affirmed.                *Affirmed.*

Mr. Justice Musser and Mr. Justice Gabbert concur.

---

Mr. Justice Gabbert concurring specially:

In my opinion, the only meritorious questions presented are the insufficiency of the petition with respect to the description of the place of residence of the signers and the designation of the dates of signing, and the proposition that the election held in the town of Prospect Heights in April, 1908, was a bar to the submission of the question the following fall to the voters of precinct 20, which embraced part of that town, and other territory. Both of these questions were determined adversely to the contention of counsel for plaintiff in error in case No. 6665 —*People ex rel. Arfman v. County Clerk of Boulder Co., ante,* 349; and, although contrary to my views, I must now accept the decision in that case as conclusive of the same questions raised in this.