[No. 10817.   Department One.   October 26, 1912.]

The State of Washington, *on the Relation of J. S. Czerny, Plaintiff*, v. The Superior Court for King County, *Respondent.*[1]

Intoxicating Liquors—Local Option—Petition for Election—Signers—Requisites. The local option law, Rem. & Bal. Code, § 6294, requiring signers of the petition to give the "street and house number, if any, of his residence," and providing that no signature shall be valid unless the requirement is complied with, is mandatory and a signature to the petition failing to give the street and house number, if any, is invalid and cannot be counted in determining whether sufficient electors have signed the petition.

Same. The local option law, Rem. & Bal. Code, § 6294, providing that every signer of the petition in a city, as distinguished from a town, shall give his "street and house number, if any, of his residence," requires him to give his street, if any, although he has no house number.

Certiorari to review a judgment of the superior court for King county, Gilliam, J., entered October 11, 1912, upon findings in favor of the defendant, dismissing an action to

[1]Reported in 127 Pac. 207.

enjoin the holding of an election under the local option law, after a trial on the merits.    Reversed.

*Churchill & Davis* and *William A. Greene*, for relator.

*Lester E. Kirkpatrick* and *T. W. Bassett*, for respondent.

PARKER, J.—On September 13, 1912, the relator commenced an action in the superior court for King county, seeking an injunction against the city clerk of the city of Kent restraining him from giving a notice of election and submitting to the electors of the city the question of whether the sale of intoxicating liquors shall be permitted within the city, which the city clerk was proceeding to do in pursuance of a petition signed by certain electors of the city and filed in his office.   Pleadings being filed bringing in issue certain questions of law and fact touching the legal sufficiency of the petition asking for the submission of the question to the electors of the city, the case was heard and submitted to the court upon the merits, resulting in findings of fact and judgment denying the injunction prayed for.   The relator has caused to be brought before us by certiorari for review that judgment and the proceedings upon which it is rested, and prays a reversal thereof.

The local option law provides for the holding of an election upon the question of whether the sale of intoxicating liquors shall be permitted within the boundaries of any of the units defined by the law, the city of Kent being one of such units, upon petition subscribed by the qualified electors of such unit equal in number to at least thirty per cent of the electors voting at the last general election within such unit.   It is further provided therein that,

"The persons signing such a petition shall state their postoffice address, the name of the precinct in which they reside, and in case the subscriber be a resident of a city, the street and house number, if any, of his residence,  .  .  .  .  No signature shall be valid unless the above requirements are

complied with." Laws 1909, p. 153, § 3; Rem. & Bal. Code, § 6294.

The failure of thirty per cent of the electors of the city voting at the last general election to sign the petition and state the names of the respective streets of their residences, is the alleged defect in the petition rendering it insufficient in law to warrant the calling of an election, principally relied upon by the relator. Our conclusion upon the question of the sufficiency of the petition in this respect will render it unnecessary for us to notice other alleged defects in the petition. The facts determinative of this question are not in dispute, and may be briefly stated as follows:

The number of electors voting at the last general election within the city of Kent was 636. Hence, the number of required signers to a petition to warrant the calling of an election under the local option law would be 191. The petition here involved, and upon which the city clerk was proceeding to call the election, was signed by 262 persons claiming to be electors of the city. One hundred and seven of these signers did not give the name of any street upon which they resided, though they did in fact all reside upon streets having official names, so the petition was signed by only 155 persons who gave the names of the streets upon which they resided, respectively. This number, it will be noticed, is considerably less than thirty per cent of the number of electors voting at the last general election within the city, and would not be sufficient to authorize the calling of an election if the 107 signers who failed to give the streets of their residence are to be excluded. Kent is a city of the third class. It does not have a general system of house numbers, though all of its streets have official names.

It is contended by counsel for the relator that the signatures of 107 persons signed without giving the names of the streets of their residences must be excluded as invalid signatures for that reason. We are unable to escape the conclusion that these 107 signatures are invalid and must be excluded

from the petition in testing its sufficiency in so far as the required number of signatures is concerned., If it were not for the mandatory language of the law touching this requirement that the signers give the names of the streets of their residence, there might be room for arguing that such requirement is only directory. But it will be noticed that it is one of the specifically enumerated requirements, and is followed by the unqualified declarations that "No signature shall be valid unless the above requirements are complied with." The rule touching the necessity of complying with such a mandatory provision of law is stated in the text of 15 Cyc. 317, as follows:

"The courts have uniformly held that when the statute expressly or by fair implication declares any act to be essential to a valid election, or that an act shall be performed in a given manner and in no other, such provisions are mandatory and exclusive."

This rule is supported by numerous decisions of the courts there cited.

Our attention is called to the recent decision of this court in *State ex rel. Quillen v. Superior Court*, ante p. 343, 126 Pac. 899, which seems to be relied upon as a holding that the failure to give the street of the residence of the signer does not render such signature invalid. While this exact question was not discussed in that decision, it might be regarded as indicating the view of the court favorable to the contention of counsel for respondent, if it were not for the fact that a local option election in the town of Winlock was there involved, and not such an election in a city, as distinguished from a town. By the terms of the local option law, it is only when the signer of a petition is a "resident of a city," that the signer is required to state the "street and house number, if any, of his residence." It seems to us that it is not at all difficult to see that the legislature used the word "city" advisedly in this connection, and that the word was so used in its strict legal sense. By reference to the

general law relating to the classification and organization of cities and towns, we find that "municipal corporations are divided into cities and towns; cities are divided into three classes: first, second and third." We also find that municipal corporations having more than fifteen hundred inhabitants are cities, while those having a less population "shall be known as towns." Rem. & Bal. Code, §§ 7478, 7479, and 7480. And again in § 7719, the first section of that subdivision of the general law relating particularly to the organization of towns, it is provided "Every municipal corporation of the Fourth class shall be entitled the town of ———————— (naming it)." Thus it will be seen that the words "town" and "city" have a well defined statutory meaning, and are clearly distinguishable from each other. In the first section of the local option law, § 1, page 153, Laws of 1909, Rem. & Bal. Code, § 6292, we find the expression, "Each city of the first, second, third or fourth class"; also the words "fourth class towns." It is argued that this loose reference to municipal corporations of the fourth class indicates an intention on the part of the legislature to use the word "city" as including the word "town" in that part of the law prescribing the petition requirements. The language of the first section is a mere reference to the classes of municipal corporations already existing for the purpose of defining the units for holding local option elections. It is manifest that the word as used in that section in connection with the words "fourth class" is there only used as meaning municipal corporations of that class, since there are no such things as cities of the fourth class, but municipal corporations of the fourth class, which are towns as distinguished from cities. It was said in the *Quillen* case above cited:

"It is manifest that the purpose and intention of this statute was to require each petitioner to give such information relative to his place of residence, including his precinct and street number, as would enable interested parties to

readily ascertain whether he was in fact an elector residing within the unit in which the election was to be called."

It is manifest that in a town of less than 1,500 population the necessity for having the signer state his street and house number in order that it may be readily ascertained whether he is in fact an elector is of minor importance, compared to the necessity of such information being furnished by him for that purpose in a city having a large population. It would ordinarily be easy to identify an elector in a town having a small population without any such information, while such would not be the case in a populous city. And this is manifestly the reason prompting the prescribing of the petition requirements of this law. Of course there would not ordinarily be any substantial difference in this respect between a city and town which were very near the same population; but the legislature in prescribing a rule resting upon difference in population had to adopt some fixed standard, and we think it has clearly done so by this law. Having prescribed a petition requirement applicable to cities only, we must apply it alike to all cities. We therefore think that the *Quillen* decision does not hold that it is unnecessary for a signer of a petition to give the street of his residence when he is "a resident of a city."

It is contended by counsel for respondent that the words "street and house number, if any, of his residence," does not require that the signer give either, when he has no house number, even if he does reside upon a street. It seems to us that since the words "street" and "house" are connected by the conjunction "and," this contention is not sound. We are of the opinion that the words are to be construed as if they read, "street if any" and "house number if any." Not only is this the plain import of the language as we read it, but the possible evil at which the provision is directed suggests this meaning. It is well known that in the suburbs of cities there are many electors having residences which cannot be designated by house number by reason of the number-

ing system not having been extended to the suburbs, but whose residences might be designated by the names of the streets upon which such residences may front, together with the designation of their precinct. It is also well known that in cities there are a number of precincts. These precincts include a comparatively small population. This is manifest from the fact that they are supposed to contain not more than 300 voters. Rem. & Bal. Code, § 4897. A designation of a residence location by street, even in the absence of a number, would ordinarily furnish a fairly reliable guide to the place of residence of the signer of a petition claiming to be an elector, when it is remembered that he must also state his precinct. This leads us to conclude that it was the legislative intent that the signer of the petition must state the street of his residence, if his residence be upon a street, that is, fronting upon a street, even though he have no house number. To hold otherwise, would, it seems to us, remove one of the checks provided by this law upon possible fraud. We cannot, in view of the plain terms of the law, adopt a different rule for the small city of Kent than is required for a large city, though the rule may seem much more necessary in a large city.

We are of the opinion that, upon the undisputed facts in this case, the petition is not sufficient in law to authorize the calling of an election, and that the learned trial court should have granted an injunction restraining the calling and holding of an election. The judgment is reversed, with directions to the superior court to grant the injunction as prayed for.

MOUNT, C. J., GOSE, CROW, and CHADWICK, JJ., concur.