[Civ. No. 1377.   Third Appellate District.—March 25, 1915.]

W. H. OSBORN, Petitioner, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF MERCED et al., Respondents.

ORDINANCE—RE-ESTABLISHMENT OF BOUNDARIES OF TOWNSHIP—REFERENDUM—PETITION—CERTIFICATE OF CLERK—SUFFICIENCY OF.—The contention that the certificate of the clerk attached to a referendum petition is insufficient by reason of its failure to recite that said petition was signed by a sufficient number of "registered qualified electors" and that the clerk ascertained this fact by an examination of the "great register of 1914" cannot be maintained, where the certificate certifies as follows: "That after said petition was filed as aforesaid, I, as said clerk, examined the records of registration in said county to determine therefrom if a sufficient number of qualified electors signed said petition and from said examination I, as

said clerk, have found that a number of qualified electors in excess of ten per cent of the vote cast for all candidates for the office of governor at the last general election signed said petition, each and all of whom were qualified electors of said county at the time they so signed." Such certificate is sufficient.

ID.—ESTABLISHMENT OF JUDICIAL TOWNSHIPS—LEGISLATIVE ACT.—The abolition or creation of a judicial township in a county by the board of supervisors is a legislative act and not a ministerial or executive act.

ID.—ESTABLISHMENT OF BOUNDARIES OF TOWNSHIPS—POWER OF SUPERVISORS.—By statute the legislature has provided generally for justices' courts and judicial townships and has granted to boards of supervisors the authority to complete the legislation by determining the number and establishing the boundaries of said township in their respective counties.

ID.—REFERENDUM PETITION—SIGNATURES—RESIDENCES.—The requirement that the signers of a referendum petition shall give after their signatures the places of their residences by street and number is for the convenience and aid of the clerk in finding the names in the great register, and such a petition is not insufficient by reason of the failure of some of the petitioners to give the places of their residences by street number where it is sufficient for the clerk's information, as the omission in such a case is a mere irregularity and could result in no prejudice.

APPLICATION for a Writ of Mandate originally made in the District Court of Appeal for the Third Appellate District directed against the Board of Supervisors of the County of Merced to compel it to repeal a certain ordinance providing for discontinuing one of the judicial townships of the county and the re-establishment of the boundaries of another township so as to include the one abolished, or submit the same to the voters of the county.

The facts are stated in the opinion of the court.

Henry Brickley, and Andrew R. Schottky, for Petitioner.

C. H. McCray, and F. P. Tuttle, for Respondents.

BURNETT, J.—The application is for a writ of mandate to compel the board of supervisors of Merced County to repeal a certain ordinance enacted by said board or to submit the same to the voters of said county. Respondents have filed a demurrer and an answer to the petition, although there seems to

be no controversy as to the facts. The ordinance in question is set out in the petition and it is sufficient to say that it provides for discontinuing one of the judicial townships of the county and the re-establishment of the boundaries of another township so as to include the one abolished.

Three points are made by respondents: "1. That the protest petition does not conform to the law; 2. That the ordinance in question is not an ordinance subject to referendum; 3. That the protest petition was not properly circulated, signed, attested, and filed under and in compliance with the provisions of section 4058 of the Political Code."

For a discussion of the general principles involved herein it is sufficient to refer to *Chase* v. *Kalber*, 21 Cal. App. Dec. 481, and *Minges* v. *Board of Trustees of City of Merced, ante*, p. 15, [148 Pac. 816], recently decided by this court. The special objections and criticisms of respondents as to the contemplated procedure may receive brief consideration.

The first claim of respondents is that the certificate of the clerk attached to the referendum petition is insufficient by reason of its failure to recite that said petition was signed by a sufficient number of "registered qualified electors" and that the clerk ascertained this fact by an examination of "the great register of 1914." Said certificate, as far as material, is as follows: "That after said petition was filed as aforesaid I, as said clerk, examined the records of registration in said county to determine therefrom if a sufficient number of qualified electors signed said petition and from said examination I, as said clerk, have found that a number of qualified electors in excess of ten per cent of the vote cast for all candidates for the office of governor at the last general election signed said petition, each and all of whom were qualified electors of said county at the time they so signed." The foregoing is similar to the certificate considered in the Minges case, and, for the reasons stated therein, we hold it sufficient.

We think there is no more merit in the contention that the matter involved is not legislative in character. The authority for the action of the board of supervisors is found in section 4015 of the Political Code, as follows: "The board of supervisors of each county, as public convenience may require, shall divide their respective counties into townships for the purpose of electing justices of the peace and constables; provided, however, that in the establishment of townships that may be

hereafter established no incorporated city shall be divided so as to lie partly within one township and partly within another.'' We think petitioner's position is correct that by statute the legislature has provided generally for justices' courts and judicial townships but has granted to the boards of supervisors the authority to complete the legislation by determining the number and establishing the boundaries of said townships in their respective counties.' The abolition or creation of a judicial township in a county would seem to be as distinctly legislative as anything the board of supervisors may be called upon to do in an official capacity. As suggested by petitioner, the creation of a judicial township establishes for and imposes upon the people residing within a certain prescribed territory a form of government consisting of a justice court and an executive officer or constable. The abolition of a township takes away this form of government and in either act is the whole county interested since it must bear the expense of the salaries of said officers. The ordinance in question is plainly of a general and permanent nature, its enactment involves judgment and discretion on the part of the board, and in no respect does it partake of the quality of a mere ministerial or executive act. In fact, the ordinary and usual form of legislation by the board of supervisors finds expression in the enactment of an ordinance and it would certainly be an exceptional case where it could be held that such enactment was not legislative.

The last objection of respondents grows out of the failure of some of the referendum petitioners to give after their signatures the places of their residence by street and number. The requirement as to "residence" is undoubtedly for the convenience and aid of the clerk in finding the names in the great register. While the petition might have been more specific in this respect it was apparently sufficient for the clerk's information and the objection goes to a mere irregularity that could and did result in no prejudice. The point is really covered by the case of Conn v. City Council, 17 Cal. App. 713, [121 Pac. 718], and Locher v. Walsh, 17 Cal. App. 727, [121 Pac. 712]. In the former it is said: "In this connection it appears that some of the signers of the several recall petitions did not sign their names in full—that is to say, they gave only the initials of their given name. Others failed to comply with the charter requirement that each signer shall add to his sig-

nature his place of residence, giving the street and number. Because of this it is urged that the petitions, upon their face, fail to contain the requisite number of adequate signatures called for by the charter and that therefore the petitions were wholly insufficient to confer jurisdiction upon either the city clerk or the city council to inaugurate the recall election petitioned for." After stating that such strictures were quite technical and that the charter in question should receive a liberal construction with a view of promoting the purpose for which it was enacted, it was declared that said specifications were "intended solely for the purpose of facilitating the work of the clerk in investigating, identifying, and verifying the persons and signatures of the purported signers of the recall petition" and that there was a substantial compliance with the requirement of said charter.

As we view the law and authorities we think the writ should issue and it is so ordered.

Chipman, P. J., and Hart, J., concurred.