[Civ. Nos. 2405 and 2410.   Third Appellate District.—December 13, 1921.]

THEODORE W. CHESTER, etc., Plaintiff and Respondent,
v. HARRY W. HALL, as County Clerk, etc., Defendant
and Appellant;  J. C. CRUMP, Intervener and Appellant.

[1] COUNTIES—CHARTER ELECTION—PETITION—DUTY OF COUNTY CLERK. Under section 7½ of article XI of the constitution, providing that petitions for county charter elections shall be signed by fifteen per centum of the qualified electors, the duties of the county clerk in examining and certifying the petition are purely ministerial, and if the petition is signed by the required number of qualified electors as shown by the registration records, he must certify the petition to the board of supervisors.

[2] ID.—SOLICITOR OF SIGNATURES—AFFIDAVIT.—A person soliciting signatures for such a petition is not required to attach any affidavit thereto.

[3] Id.—Signing of Petition—Affixing of Date—Code Requirement —Constitutional Law.—The requirement of section 1083a of the Political Code that the signer of a petition shall affix thereto the date of such signing is not void as making an additional requirement to the self-executing character of section 7½ of article XI of the constitution, since it in no manner prevents any person from signing but merely facilitates the operation of the constitutional provision and places a safeguard around the exercise of the rights thereby secured.

[4] Constitutional Law — Self-executing Provision — Legislative Enactments—Liberal Construction.—Where a constitutional provision is self-executing, legislative enactments for the purpose of facilitating and safeguarding its operation should be liberally construed in order that the constitutional right may not be defeated.

[5] Counties—Dates of Signatures to Petition for Charter Election—Irregularities—Sufficiency of Petition.—A petition for a county charter election sufficient to enable the county clerk to satisfy himself from the registration records that the required number of petitioners were qualified electors at the time of signing will not be declared void, although some of the signers failed to affix the date at the time of signing, and some of the dates were not affixed by the signers themselves.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hugh B. Bradford and J. R. Hughes for Appellant.

J. M. Inman, Fontaine Johnson and Theodore W. Chester for Respondent.

Grover W. Bedeau and Ray T. Coughlin for Intervener and Appellant.

FINCH, P. J.—The defendant and the intervener took separate appeals from the judgment herein commanding the defendant to present to the board of supervisors of Sacramento County a petition praying for the election of a board of fifteen freeholders to prepare and propose a charter for said county, with his certificate thereon showing that the petition is signed by the requisite number of qualified electors. By stipulation the appeals were heard together.

In so far as pertinent to the questions presented by the appeals, the complaint alleges that the petition consisted of an original and two supplements; that they were signed by a total of 3,602 qualified electors, "each of whom at the time of such signing, affixed thereto the date of such signing," and by 129 qualified electors who did not so affix the date of signing, and that the names on the original petition were subscribed during the month of July, 1921, and that those on the supplements were signed during the month of August and prior to the filing thereof. The complaint further alleges, and it was admitted at the trial, that the total number of votes cast for all candidates for Governor at the last gubernatorial election was 20,634, thus making the number of qualified signers required by the constitution 3,095.

Giving due consideration to the rule applicable to conjunctive denials, the answer admits that more than the required number of qualified electors signed the petition and affixed thereto the dates of their respective signatures. The answer denies that the petition was signed *and* the dates thereto affixed during July and August, 1921. The defendant further "avers that there were only 2,973 qualified electors of the county of Sacramento, at the time of signing said petition, affixed thereto the date of such signing, and had attached an affidavit purporting to be an affidavit of the person who solicited the signatures thereon, with the seal attached."

The complaint in intervention does not deny that any of the signers of the original petition were qualified electors at the time they signed the same, and alleges that the supplemental petitions were signed by 388 "qualified electors of the county of Sacramento," but further alleges, on information and belief, that the dates and ditto-marks opposite 966 signatures to the original petition and 189 signatures to the supplements "were not affixed thereto by said signers at any time but that said purported dates and ditto-marks were affixed thereto by some person or persons other than said signers, and that said purported dates and ditto-marks are false, fraudulent, fictitious and void, and that by reason thereof said petition is false, fraudulent, fictitious and void."

The defendant attached to the petition his certificate reciting: "That said original petition contains the names of 2,973 qualified electors who, at the time of signing, gave date of signing, and had attached an affidavit purporting to be the affidavit of the person who solicited the signatures thereon, with seal attached"; that on sections of the original petition there were 241 "names of persons who signed said petition, whose names did appear on the record of the registration of qualified electors of Sacramento county at the time they signed said petition and at the time said petition was filed," but that to the sections containing 137 of these names no affidavit was attached and that to the sections containing 104 of such names proper affidavits were attached but to which affidavits the notary seals were not affixed, and that on sections containing 129 names no dates or affidavits were affixed; and that on sections of the supplemental petitions there were 388 "names of persons who signed said petitions whose names did appear on the record of the registration of qualified electors of Sacramento county at the time they signed said petition and at the time said petition was filed" to which no affidavit was attached.

[1] Section 7½, article XI, of the constitution provides that petitions for county charter elections shall be "signed by fifteen per centum of the qualified electors of said county, computed upon the total number of votes cast therein for all candidates for Governor at the last preceding general election at which a Governor was elected. . . . It shall be the duty of said county clerk, within twenty days after the filing of said petition, to examine the same, and to ascertain from the record of the registration of electors of the county, whether said petition is signed by the requisite number of qualified electors. . . . Upon the completion of such examination, said clerk shall forthwith attach to said petition his certificate, properly dated, showing the result thereof, and if, by said certificate, it shall appear that said petition is signed by the requisite number of qualified electors, said clerk shall immediately present said petition to the board of supervisors, if it be in session, otherwise at its next regular meeting after the date of such certificate. Upon . . . the presentation of such petition, said board of supervisors shall order the holding of a special election for the purpose of electing such board of freeholders."

[2] Neither this section nor any constitutional provision or law applicable to petitions filed under its authorization requires the person soliciting signatures to attach any affidavit to the petition. However wise such a requirement might be, it is beyond the powers of courts and ministerial officers to enact laws. The duties of the county clerk in examining and certifying the petition were purely ministerial. In the case of *Butters* v. *City of Oakland,* 53 Cal. App. 294 [200 Pac. 354], in discussing the duties of the clerk under a law in effect identical with the constitutional provision quoted, the court said: "We think all that is required of the clerk to accomplish this duty is to use his eyesight and capacity for counting to determine whether the names on the petition which also appear on the record of registration constitute enough persons to authorize the recall under the statute. . . . The record of registration will be sufficient upon the question whether or not the persons signing the petition are qualified electors. The law does not require him to go outside for information, 'but he must determine from the records of registration' whether or not the fact exists. Such an examination involves merely ministerial acts and is in no sense judicial.

"If it should happen that names were forged to the petition in sufficient numbers to reduce the lawful signatures to the petition below the statutory requirement, persons legally interested perhaps might have a remedy, the nature and character of which we need not here decide." (See, also, *Locher* v. *Walsh,* 17 Cal. App. 728 [121 Pac. 712]; *Minges* v. *Board of Trustees,* 27 Cal. App. 17 [148 Pac. 816]; *Osborn* v. *Board of Supervisors,* 27 Cal. App. 88 [148 Pac. 970].) Under the facts ascertained by the defendant he should have presented the petition, properly certified to the board of supervisors.

[3] The only contention of the intervener is that it was necessary for the signers of the petition to affix the date of signing. At the trial the intervener offered to prove by a handwriting expert the allegations of his complaint in this regard, but the court sustained plaintiff's objection to such proof. Section 1083a of the Political Code provides: "Wherever by the constitution or laws of this state, any initiative, referendum, recall or nominating petition or paper, or any petition or paper, is required to be signed

by qualified electors, only an elector who is a registered qualified elector at the time he signs such petition or paper shall be entitled to sign the same. . . . Such signer shall at the time of so signing such petition or paper affix thereto the date of such signing.'' Respondent argues that the constitutional provision quoted is self-executing and that the legislature can make no additional requirements. ''A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced.'' (Cooley's Constitutional Limitations, 7th ed., p. 121; *Winchester* v. *Howard,* 136 Cal. 439 [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77]; *People* v. *Hoge,* 55 Cal. 612.) It is clear that the constitutional provision in question is self-executing, but it does not follow that legislation may not be enacted to facilitate its operation and place safeguards around the exercise of the rights thereby secured so long as the right itself is not curtailed or its exercise unreasonably burdened. ''Legislation may be desirable, by way of providing convenient remedies for the protection of the right secured, or of regulating the claim of the right so that its exact limits may be known and understood; but all such legislation must be subordinate to the constitutional provision, and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it.'' (Cooley's Constitutional Limitations, 7th ed., p. 122. See, also, *Welch* v. *Williams,* 96 Cal. 365 [31 Pac. 222]; *State* v. *Hooker,* 22 Okl. 712 [98 Pac. 964]; *City of Pond Creek* v. *Haskell,* 21 Okl. 711 [97 Pac. 338]; *Stevens* v. *Benson,* 50 Or. 269 [91 Pac. 577]; *State* v. *Superior Court,* 81 Wash. 623 [Ann. Cas. 1916B, 838, 143 Pac. 461].) The requirement of section 1083a of the Political Code that the signer of a petition shall ''affix thereto the date of such signing'' in no manner prevents any person from signing or places an undue burden on the exercise of the right. The constitution prescribes the qualifications of electors and provides that all persons having such qualifications ''shall be entitled to vote at all elections.'' The constitution makes no provision for the registration of electors, yet registration laws have always been upheld as reasonable regulations by the legislature for the purpose of

ascertaining who are qualified electors and preventing illegal voting.

[4] Where a constitutional provision is self-executing, however, legislative enactments for the purpose of facilitating and safeguarding its operation should be liberally construed in order that the constitutional right may not be defeated. In *State* v. *Superior Court, supra,* the court said that such legislative enactments require "liberal construction, to the end that this constitutional right [referendum] of the people may be *facilitated,* and not *hampered* by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right." In the case of *In re Initiative Petition No. 23,* 35 Okl. 49 [127 Pac. 862], it is said: "Those who circulate the petition will necessarily be drawn from the ranks of volunteers or those who, for a very small consideration, call attention to their fellow-citizens to the measure proposed, and solicit their interests therein. Necessarily, even with the best safeguards that can be thrown around the circulation of petitions, where such a large number of names are required, inaccuracies and technical departure from prescribed forms are certain to occur every time a petition is circulated. The people who sign the petitions often, if not generally, lack both convenience and the best writing materials to distinctly, legibly, and permanently attach their names thereto. All of these things are proper to be noted and taken into consideration in the administration of this law. It can be made effective or defeated by the officers charged with its administration, and it is our duty to sustain it, rather than destroy, if it can be accomplished within the law." (See, also, *Stevens* v. *Benson, supra.*) It has been held that petitions must comply strictly with constitutional requirements (*Thompson* v. *Vaughn,* 192 Mich. 512 [159 N. W. 65]), with laws wherein it is provided that no name shall be counted unless the requirements of the law are complied with (*People* v. *Newell,* 49 Colo. 349 [113 Pac. 643]; *Adamic* v. *People,* 49 Colo. 546 [113 Pac. 648]; *State* v. *Superior Court,* 70 Wash. 592 [127 Pac. 207]), and that laws requiring the addresses of the petitioners to be stated must be substantially complied with in so far as necessary to provide means of tracing the signers (*In re*

*Referendum Petition No. 31* (Okl.), 172 Pac. 639; *In re Referendum Petition No. 509,* 78 Okl. 47 [186 Pac. 485].) In *State* v. *Superior Court,* 70 Wash. 592 [127 Pac. 207], the court said: "If it were not for the mandatory language of the law touching this requirement of the signers giving the names of the streets of their residence, there might be room for arguing that such requirement is only directory." In *Michaelson* v. *Wall Tp.,* 92 N. J. L. 72 [108 Atl. 145]; it is said: "Many of the petitioners did not state the name of the street or road on which they resided, as provided in the statute. This requirement we think was merely directory, and for the convenience of the governing body in ascertaining the genuineness and legitimacy of the signatures." In *Osborn* v. *Board of Supervisors,* 27 Cal. App. 88 [148 Pac. 971], the court said: "The requirement as to 'residence' is undoubtedly for the convenience and aid of the clerk in finding the names in the great register. While the petition might have been more specific in this respect it was apparently sufficient for the clerk's information and the objection goes to a mere irregularity that could and did result in no prejudice." (See, also, *O'Keefe* v. *Dugan,* 185 App. Div. 53 [172 N. Y. Supp. 558]; Id., 225 N. Y. 667 [122 N. E. 887].)

[5] Without going to the extent of holding that the provision requiring the signer to affix the date of his signing is merely directory, the foregoing authorities establish the rule that the statute is to be liberally construed in the light of the circumstances attending each particular case. The petition in this case seems to have been sufficient to enable the defendant to satisfy himself that the petitioners were qualified electors at the time they signed their names thereto. For aught that appears in the record, the names of the signers who failed to affix the dates of signing and those where others than the signers affixed such dates may have been interspersed among other names to which the dates were properly affixed. It might be logically inferred that any signature was made between the dates of the signatures immediately preceding and following the one in question. The court will take judicial notice that this is not a year of general registration. The clerk may have found that many or all signatures which were not properly dated were of persons who had been registered for a year or more and have there-

fore considered the exact date of signing as immaterial. It is possible, of course, that sections of the petition may have been prepared and signed at times other than the dates affixed to the signatures, but no offer or attempt was made to prove that such was the case. The offer of proof made was merely to show by the testimony of a handwriting expert that such dates were not affixed by the signers themselves. Intervener suggests that the petition might° have been circulated five years ago and ''all the purported signers could have signed at that time.'' Courts cannot, however, base their decisions upon speculations contrary to the presumption that the ordinary course has been followed.

The manifest purpose of the law requiring the signers to affix the date of signing is to guard against signatures by persons who are not qualified electors at the time of signing. The pleadings admit that several hundred more qualified electors signed the petition than the law requires. Under such circumstances, to hold that the petition is insufficient would be to follow the letter of the law in disregard of its spirit. ''The letter killeth, but the spirit giveth life.'' ''No judgment shall be set aside . . . on the ground of . . . rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'' (Const., art. VI, sec. 4½.) It is plain that there has not been a miscarriage of justice in this case.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 12, 1922.