[Civ. No. 6378.  First Appellate District, Division One.—September 11, 1929.]

## THE PEOPLE, Respondent, v. CITY OF BELMONT et al., Appellants.

Roger Sherman and Donovan O. Peters for Appellants.

William J. Locke for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from the judgment in which it is adjudged that defendant City of Belmont is not now and never was incorporated or organized as a municipal corporation, and has not now and never had any legal existence. The action is one in *quo warranto* brought against the City of Belmont to set aside the incor-

poration on the grounds that plaintiff Bourdette's three lots, consisting of an undivided parcel of thirty acres of land, had been included within the incorporated boundaries without his petition, and that the city's petition for incorporation is illegal in that the dates the signers signed the petition were omitted after the signatures thereto.

The complaint contains three causes of action. Inasmuch, however, as plaintiff is not urging his third cause of action and no finding thereon was made by the trial court, we are concerned only with the first and second causes of action: the first placing in issue the jurisdiction of the board of supervisors to act on the petition by reason of the omission of dates opposite the signatures thereon, and the second placing in issue the authority of the board to act by reason of the inclusion of plaintiff's ranch land or outside acreage within the boundaries of the incorporated area without his petition or acquiescence.

The petition was filed with the board on August 2, 1926. Section 2 of the Municipal Corporation Bill then provided, and still provides (Deering's Gen. Laws 1923, Act 5233), that a petition signed by at least fifty of the qualified electors of the county resident within the limits of the proposed corporation shall be presented to the board, and that the affidavit of three qualified electors residing within the proposed limits "certifying to the genuineness of the said signatures filed with the petition shall be *prima facie* evidence of the requisite number of signatures." The sufficiency of the petition with respect to the signatures was not required to be certified or determined by the county clerk, but the question was one to be determined by the board, and the affidavit of the three electors filed with the petition, in so far as jurisdiction depended upon the number of signatures, was sufficient without further evidence to give the board power to proceed. (*Hoffecker* v. *Board of Supervisors*, 23 Cal. App. 405 [138 Pac. 371].)

The court found "that none of the signers of said petition for incorporation affixed to said petition the date of signing the same either at the time of so signing or at any time thereafter, or at all," and further, "that in the territory embraced within the boundaries of said alleged corporation there were at the time of said election, and still are, certain portions thereof more densely populated than

others which had been subdivided into town or other lots and delineated upon a recorded map under the map law of March 15, 1907, as amended; that the territory within said boundary also contains areas of ranch land or outside acreage including the aforesaid lands of plaintiff which the board of supervisors included within said boundaries, in addition to said subdivided area, notwithstanding the fact that the owners of said ranch land or outside acreage including plaintiff had not petitioned to have said lands included therein.''

█   As to the failure of the signers to affix the dates on which they signed the petition, it may be said that the fact is undisputed that the clerk satisfied himself that such signers were qualified electors. Plaintiff does not in his complaint or otherwise question the fact that at the time of signing the petition the signers were qualified electors, but contends that the provisions of section 1083a of the Political Code, which provides that the signers of all petitions shall put down the date of signing the same, is a mandatory requirement. In the recent case of *Carter* v. *Green,* 97 Cal. App. 564 [276 Pac. 120, 121], in which case a rehearing in the Supreme Court was denied, this court said: ''Respondents contend, however, that section 1083a of the Political Code, which provides that 'wherever by the constitution or laws of this state any initiative, referendum, recall or nominating petition or paper, or any petition or paper, is required to be signed by qualified electors . . . such signers shall at the time of so signing such petition or paper affix thereto the date of such signing,' not having been complied with by a number of the signers equal to one-fourth of the qualified electors of the municipality the petition was properly rejected. The purpose of the statute was to guard against signatures by persons who were not qualified electors at the time of signing the petition (*Chester* v. *Hall,* 55 Cal. App. 611, 619 [204 Pac. 237]) ; and it has been held that non-compliance therewith is a justification for refusal by the proper officer to certify as sufficient the names of the signers as to whose signatures the dates of signing are not affixed (*Boggs* v. *Jordan,* 204 Cal. 207 [267 Pac. 696] ; *Chambers* v. *Glenn-Colusa Irr. Dist.,* 57 Cal. App. 155 [206 Pac. 773] ). But, as was in effect held in the above cases, where the officer whose duty it is to determine the sufficiency

of the petition from the registration records found the same
to have been signed by the requisite number of qualified
electors, the fact that the dates of signing were not affixed
by them but by another will not render void the proceed-
ings based thereon. This was not equivalent, however, to
holding the above provision to be merely directory, or that
such officer would be bound to act notwithstanding the
signers had failed to comply with the statute; for, as the
court said in *Chambers* v. *Glenn-Colusa Irr. Dist., supra,*
'The requirement is, of course, plain and unequivocal, within
the power of the legislature to prescribe, and there is no
good reason for holding it to be otherwise than manda-
tory.' '' In other words, the provision of the statute re-
quiring signers to petitions to ''affix thereto the date of
such signing,'' while mandatory on the petitioners, is for
the benefit or convenience of the clerk whose duty it is to
check the signatures on the petition with the registration
records to determine whether or not the persons signing
are qualified electors, and while the clerk is not required
to go beyond an examination of the petition itself (*Cham-
bers* v. *Glenn-Colusa Irr. Dist.,* 57 Cal. App. 155 [206 Pac.
773]), he having done so and having found the signers of
the petition to be qualified, in the absence of fraud his
determination of this question is final, as the statute imposed
upon him the duty and vested in him the authority to ex-
amine the petition which was filed with him and from the
great register ascertain whether or not such petition is
signed by the requisite number of qualified electors of the
territory described therein. (*Watts* v. *Superior Court,* 36
Cal. App. 692 [173 Pac. 183]; *Good* v. *Common Council,*
5 Cal. App. 265 [90 Pac. 44]; *Beecham* v. *Burns,* 34 Cal.
App. 754 [168 Pac. 1058]; *Williams* v. *Gill,* 65 Cal. App.
129 [223 Pac. 559]; *Chester* v. *Hall,* 55 Cal. App. 611 [204
Pac. 237].)''

As is said in *People* v. *Town of Ontario,* 148 Cal.
625, 637 [84 Pac. 205, 210], ''as was said by the same author
in the section already quoted (Freeman on Judgments, sec.
523) 'the only difficulty in cases of this class is in deciding
whether the board is vested with authority to determine
that it is properly signed, or, in other words, whether it is
empowered to decide upon its own jurisdiction. This power
need not be conferred in express terms.' This court has

repeatedly held that statutes of a similar character give such power to the tribunal to which the petition is presented, and that the very act under consideration gives such power to the board to which the petition is presented, and that its conclusion thereon is beyond review and final so far as *quo warranto* proceedings are concerned, was definitely decided in *People* v. *Los Angeles,* 133 Cal. 338 [65 Pac. 749]. Under the decisions the order of the board calling the election must here be taken as conclusive evidence that the petition presented, sufficient on its face, was in effect sufficiently signed by electors to confer the requisite power, and that the finding of the board to that effect, be it express or implied, was sustained by satisfactory proof." Here, the board "did resolve, ascertain and determine that said petition was regularly signed and subscribed by the prescribed number of legally qualified petitioners." Further, "the making of the order for the election implies not only the determination, as we have already seen, but also that such determination was reached upon proofs satisfactory to the board. The statute makes no provision as to the character of proof essential in such a case. Whatever may be the rule applicable in *certiorari,* which is a direct attack upon the particular order alleged to have been in excess of jurisdiction (see *Stump* v. *Board of Supervisors,* 131 Cal. 364 [82 Am. St. Rep. 350, 63 Pac. 663]), the decisions of this state compel us to hold that even an implied finding is conclusive in a *quo warranto* proceeding, or in any case where the order is collaterally attacked" (*People* v. *Town of Ontario, supra*).

The Municipal Corporation Bill (Act 5233, Deering's Gen. Laws), after setting forth the number of inhabitants required to organize a municipal corporation, in section 2 of the act provides: " . . . and provided further, in the case of municipal corporations of the sixth class that in the event that the proposed boundaries of such corporation contain both a center of population subdivided into town or other lots delineated upon a map recorded as provided by an act entitled 'An Act requiring the recording of maps of subdivisions of land into lots for the purpose of sale, and prescribing the conditions on which such maps may be recorded and prohibiting the selling or offering for sale of land by reference to said maps unless the same are recorded,' ap-

proved March 15, 1907, as amended, and an area of ranch land or outside acreage, the said board of supervisors shall include within said proposed boundaries in addition to said subdivided area only such portion of said area of ranch land or outside acreage as the owners thereof shall have petitioned to have included within the limits of said proposed corporation. The boundaries so established by the board of supervisors shall be the boundaries of such municipal corporation until by action authorized by law for the annexation of additional territory to, or the taking of territory from, said municipal corporation, such boundaries shall be changed . . . ''

█ Under the above provision, in order that the signature of the owner of ranch land or outside acreage included within the proposed boundaries be a necessary prerequisite, two conditions must exist: one, there must be a center of population, and the other, the center of population must be subdivided into town or other lots delineated upon a recorded map. █ Here no point is made respecting the recording of the map; the controversy, in so far as the question now being considered is concerned, turns upon whether or not the proposed boundaries contain a center of population. As to this fact there is a conflict in the testimony. The plaintiff testified that there is a center of population, while George A. Kneese, the county surveyor, and Donald S. Mulford, assessor for the sanitary district which includes the area of Belmont, both testified that there is no center of population in the City of Belmont, but that there are some portions more densely populated than others. On this issue the only finding of the court is: ''That in the territory embraced within the boundaries of said alleged corporation there was at the time of said election, and still are, certain portions thereof more densely populated than others which had been subdivided into town or other lots and delineated upon a recorded map under the map law of March 15, 1907, as amended,'' and no finding is made as to whether or not there existed a center of population. As we view the case, however, this question becomes unimportant as the board of supervisors determined as a fact ''that no portion of said territory within said boundaries is a part of or included within any existing municipal corporation nor do said boundaries contain a center of population subdivided

into town or other lots and an area of ranch land or outside acreage, the owners of which have not petitioned to be included within the limits of said corporation,'' and the determination of this question is left exclusively to such board.

In *People* v. *City of Los Angeles*, 154 Cal. 220, 225 [97 Pac. 311, 313], the court says: ''Under the constitution all questions as to population and extent and character of territory to be included in the incorporation of cities or towns is left entirely to the legislature, and that under its power to provide for the incorporation of such municipalities, the question of the extent and character of territory proposed to be incorporated is left, under the general Municipal Incorporation Act, as the legislature was authorized to leave it, exclusively to the board of supervisors of the county in which the city is to be incorporated, and the courts have no control of the subject.'' In *People* v. *Town of Loyalton*, 147 Cal. 776, 781 [82 Pac. 620, 623], in considering the question of the refusal of the court to permit plaintiff to show that the board of supervisors mistakenly thought certain property was included in the proposed boundaries, and as to population, at the time it heard and determined the eligibility of the signers to the petition, the court concludes: ''But we think such proposed evidence was entirely immaterial. As we have seen, it was for the board of supervisors to finally determine both of these matters from the evidence submitted to them, and neither the evidence nor the mental processes by which their conclusion was reached are reviewable here.''

■ The action appears to have been brought on the mistaken theory that this question was an original one for the court to decide, and as there is nothing in the record showing what evidence was taken by the board of supervisors upon which it determined that there was not a center of population, we cannot say that its judgment lacks support. If, however, upon the hearing before the board the same evidence was presented as was presented to the trial court with the same conflict, the board's finding would not be disturbed by the court, as the question of the extent and character of the territory proposed to be included in the corporation is left exclusively to the board of supervisors, and the courts have no control of the subject. ■ With

the wisdom of the board's determination in the matter the courts cannot interfere. They only interfere where some substantial provision of the law has been violated or where fraud was perpetrated in the matter of the boundaries (*People* v. *City of Los Angeles, supra*), and here no fraud is pleaded nor claimed.

Upon the record as presented the judgment must be reversed, and it is accordingly ordered.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 11, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 4, 1929.

All the Justices concurred.