[S. F. No. 12911.   In Bank.—May 21, 1928.]

FRANK S. BOGGS, Petitioner, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

J. M. Inman, P. G. West and Edson Abel for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

Henry E. Carter, Harry Lyons, J. W. McKinley, and Frank Weller, *Amici Curiae*, for Respondent.

Frank L. Coombs and Nathan F. Coombs, *Amici Curiae*, for Petitioner.

SHENK, J.—This is an application for a writ of mandate to compel the respondent, Secretary of State, to disregard and take no further action with reference to certain referendum certificates heretofore filed in his office and to notify the county clerks and registrars of voters throughout the state of the offices of members of the legislature to be nominated at the primary election to be held in August, 1928, in their respective counties and city and county, such notification to be in accordance with the provisions of the re-apportionment measure adopted by the legislature in 1927 (Stats. 1927, p. 1757).

As a return to the alternative writ the respondent filed a general demurrer and at the same time an answer denying, for want of information or belief, the allegations of the petition which form the basis of the petitioner's alleged cause of action.

Prior to November 2, 1926, and since the adoption of the constitution in 1879, section 6 of article IV thereof provided, among other things, for the division of the state into senatorial and assembly districts in such manner that the forty

senatorial districts and the eighty assembly districts should be "as nearly equal in population as may be." It was also provided that the legislature, at its first session after each federal census, should adjust such districts and re-apportion the representation so as to preserve them "as nearly equal in population as may be" in accordance with the last census. With substantial regularity the legislature complied with the constitutional mandate up to and following the federal census of 1910. The last action of the legislature, however, prior to 1927, was the amendment of sections 78 and 90 of the Political Code at its special session in 1911. (Stats. Extra Sess. 1911, p. 140.) No action was taken by the legislature with reference to re-apportionment following the federal census of 1920 until the passage of the act of 1927 above referred to, which act was adopted pursuant to the provisions of section 6 of article IV of the constitution as amended at the general election on November 2, 1926. This amendment effected a radical departure from the former plan, especially with reference to representation in the senate. It was provided by the amendment that the representation in the assembly should continue by the formation of districts "as nearly equal in population as may be," but with reference to representation in the senate it was provided that the senatorial districts should continue to be forty in number, but that in the formation of such districts no county or city and county should be divided. The effect of this amendment is that while a senatorial district may embrace more than one county, no county or city and county may embrace more than one senatorial district.

Pursuant to the requirements of the constitutional amendment the legislature at its session in 1927 adopted said re-apportionment measure by amending section 78 and by repealing section 90 of the Political Code. By section 78 as amended the assembly districts in the state were in some instances changed and renumbered and the senatorial districts were re-adjusted and in some instances renumbered in conformity with the requirements of the constitutional amendment.

The re-apportionment act of 1927, which was known as Senate Bill No. 490, was scheduled to become effective on July 31, 1927, and did take effect on that date unless the same was suspended by the referendum proceedings alleged

in the petition herein. The petition sets forth that on June 27th, 1927, there were filed with the registrars of voters of the county of Los Angeles and of the city and county of San Francisco and with the county clerk of the county of Alameda, and on July 14th, 1927, with the county clerk of the county of Santa Clara, "certain identical original referendum petitions addressed to the secretary of state of the state of California, asking that there be submitted to the electors of the state of California for their approval or rejection said act of the legislature of the state of California, known as Senate Bill No. 490." It is further alleged "that said registrars of voters and said county clerks within twenty days after said filing transmitted said petitions, except the signatures thereto appended, to the respondent, attaching thereto their respective certificates as to the date of the filing of said petitions, the number of sections comprising it, and further certifying that each of said sections contained signatures and dates purporting to be, respectively, the signatures of qualified electors of the respective counties and the dates upon which such electors had, respectively, signed said petition; that attached to said petition at the time of its filing was an affidavit purporting to be the affidavit of the person who solicited the signatures thereof; that the person by whom said affidavit purported to have been taken and verified was at the time thereof an officer authorized to administer oaths; that in said affidavit the affiant stated his own qualifications; that he had solicited the signatures upon said section; that all of said signatures were made in his presence, and that to the best of his knowledge and belief each signature was the genuine signature of the person whose name it purported to be; said certificates further attested that the certifying officers, after said petitions had been filed with them, had examined the affidavits of registration in their respective counties, and the records relating thereto, current and in effect at the respective purported dates of each signing, to determine therefrom what number of qualified electors had signed said petitions and had respectively affixed thereto the purported dates of their signing, and from said examination it was determined that said petitions were signed by a specific number of qualified electors of their respective counties or city and county, each of whom had affixed to said petition a date purporting to be

the date when such elector had signed said petition, and each of whom was a registered, qualified elector of the respective counties and city and county on said date; that the total number of qualified electors certified to have signed said original referendum petitions by said registrars of voters and said county clerks was 904; that thereafter, to wit: on the eighteenth, twenty-third and twenty-fifth days of July, 1927, respectively, there were filed with the registrar of voters of the city and county of San Francisco, with the registrar of voters of the county of Los Angeles, and with the county clerk of the county of Alameda, certain supplemental petitions identical with each other and with said original petitions in wording, content and all other respects except as to the purported signatures attached thereto, and bearing the purported signatures of other qualified electors of the respective counties; that thereafter and within ten days after said filing and within the time allowed by law, said registrars of voters and said county clerk transmitted to and filed with the respondent said supplemental petitions, except the signatures thereto appended, attaching thereto their respective certificates of a form and tenor identical in all material respects with the certificates attached by them to said original referendum petitions except as to the number of qualified electors certified to have signed said petitions; that the total number of qualified electors certified to have signed said supplemental referendum petitions by said registrars of voters and said county clerk was 76,521." It is further alleged "that the total number of qualified electors of the state of California certified to the respondent within the time allowed by law by the various registrars of voters and county clerks to have signed said original and said supplemental referendum petitions was 77,425." It is also alleged that the total number of votes cast for all candidates for Governor at the last preceding general election at which a Governor was elected is 1,144,112, and that the total number of genuine signatures required to be affixed to said petition in a lawful manner in order to subject said act to referendum is 57,206. From the foregoing allegations of the petition it appears that all of the steps necessary to subject the said act to a referendum have been regularly taken and said act has not become a law by reason of said referendum proceedings unless the allegations

of paragraph VII of the petition may now be inquired into, and the truth thereof having been established on a hearing either before this court or before a referee, the said referendum proceedings be declared a nullity.

In said paragraph VII of the petition it is alleged in subdivision "a" thereof that "in the case of not less than 25,000 purported signatures the purported signers of said petitions failed, neglected or refused to affix to the section of said petitions purporting to have been signed by them the date of such signing, and dates purporting to be the dates on which such signers signed their respective sections of said petition were unlawfully and in fraud and deception of said county clerks and said registrars of voters with whom said petitions were originally filed, inserted and forged to said sections by persons other than the respective signers but unknown to this petitioner." It is further alleged in subdivision "b" of said paragraph that in the case of not less than 5,000 of such signatures the signers thereof failed, neglected, or refused to affix to the section of said petition signed by them the date of such signing, and in subdivision "c" of said paragraph it is alleged that in the case of not less than 5,000 of such signatures there was not attached to any of the sections of said petitions bearing such signatures any affidavit by the person purporting to have solicited the signatures to the same to the effect that the signatures to said sections were made in the presence of the solicitor.

It is further alleged in said petition that notwithstanding the alleged illegal, false, fictitious, and fraudulent character of said signatures and their respective dates, the said registrars of voters and said county clerks included in their enumeration of the number of qualified electors of their respective counties and city and county, and in fraud of the respondent herein certified to said respondent the aforesaid signatures as good and sufficient signatures attached to said petitions. It is then alleged that the actual number of qualified electors whose signatures are appended to said petition is not in excess of 50,000. Further, that demand has been made upon the respondent to disregard said referendum certificates and that the respondent has refused to comply with such demand, and unless compelled by this court to the contrary will notify the registrars and county clerks of the state in accordance with the law in effect prior

to January 1, 1927, and will submit said act to the electors of the state for their approval or rejection at the next general election.

It is readily apparent that if the 5,000 signatures referred to in subdivision "b" of said paragraph VII of the petition and the 5,000 signatures referred to in subdivision "c" of said paragraph had been subject to proper rejection or had even been rejected arbitrarily, the said referendum petitions would have had more than the sufficient number of signatures, for there would still have been 67,425 good signatures appended to said petitions if the 25,000 names mentioned in subdivision "a" of paragraph VII of the petition were properly included. So that the vital point in the consideration of the petition herein is whether the allegations of said subdivision "a" state a cause of action against this respondent. In brief, it is alleged therein that in the case of not less than 25,000 of said signatures the signers did not affix to said petition the date of their signatures and that such dates were affixed thereto by persons other than the respective signers and that such dates were so affixed unlawfully and in fraud and deception of said county clerks and said registrars of voters. It thus appears from the pleading, by necessary inference, that dates were affixed to each of said 25,000 signatures, and it is not alleged that the dates so affixed do not represent the true dates of such signatures, but only that the said dates were so affixed by persons other than the signers and without the latter's authority.

The petition herein contains no sufficient allegations of fraud or misconduct on the part of the said county clerks or registrars of voters. It is not alleged that they or either or any of them inserted the dates opposite said names or knew anything about the time or manner of the insertion of said dates or by whom the same were affixed. It is also to be observed that no fraud or misconduct or dereliction of duty is charged against the respondent, Secretary of State. From the allegations of the petition the conclusion is compelled that said referendum petitions came into the hands of said county clerks and registrars of voters regular in form. The substance of the allegations of fraud respecting said dates, therefore, is that the dates were affixed by persons unknown and other than by the signers themselves and that this worked a fraud and deception on said county

clerks and said registrars of voters and on the respondent, Secretary of State. In other words, the petitioner's complaint is that, because the dates affixed to not less than 25,000 signatures to said referendum petition were affixed by persons unknown, and not by the signers, it is the official duty of the respondent, Secretary of State, to disregard the certificates now in his hands and to proceed in accordance with said enactment notwithstanding the said referendum proceedings. The claim is based on the provisions of section 1083a of the Political Code as amended in 1915. This section of the code was intended to supplement the constitutional regulations governing the circulation, filing, and examination of initiative, referendum, and recall petitions. It prescribes the qualifications of those entitled to sign such petitions by providing that only those who are registered qualified electors at the time of signing any such petition shall be entitled to sign the same. It also provides that whenever, by the constitution or laws of this state, the county clerk or registrar of voters is required to determine from the records of registration what number of qualified electors has signed such a petition, he shall determine the fact with respect to the purported signature of any person from the affidavit of registration and the records relating thereto. As a statutory duty imposed on each signer the section provides as follows: "Such signer shall at the time of so signing such petition or paper affix thereto the date of such signing." It is the alleged violation of the foregoing quoted requirement of the statute that forms the sole basis for the cause of action of the petitioner as to the said 25,000 signatures. It does not appear and it is not claimed that the dates to said signatures were not affixed thereto nor that said dates were not so affixed at the time the signatures were appended. The alleged violation, therefore, consists in that "such signer" did not affix the date at the time, but that the said date was affixed by some person other than the signer and unlawfully.

It is insisted by the petitioner that the provision of section 1083a of the Political Code relied upon is a valid regulation. This is not disputed by the respondent and need not now be questioned. (*Chester* v. *Hall*, 55 Cal. App. 611, 616 [204 Pac. 237].) And the requirement of affixing the dates to the signatures has been held to be mandatory to the ex-

tent that a failure to comply therewith is justification for the refusal of the proper officer to certify as sufficient the names of signers as to whose signatures the dates of "such signing" were not affixed. (*Chambers* v. *Glenn-Colusa Irr. Dist.*, 57 Cal. App. 155 [206 Pac. 773].)

█ It is the duty of the county clerk or the registrar of voters under the constitution to examine the petition filed in his office and to "determine from the records of registration what number of qualified electors has signed the same." (Const., sec. 1, art. IV.) It may be assumed that it is also his duty to see that the petition filed with him meets the requirements of the constitution and of section 1083a of the Political Code. But when, as in the case at bar, a petition has been filed in his office which is regular in form and substance and appears on its face to be in conformity with the law, and he has examined the same and has determined from the records of registration what number of qualified electors has signed the same, and has made and attached to the petition his certificate showing the result of his examination, and has transmitted the petition and his certificate to the Secretary of State, his duties in the premises have been fulfilled. His duties are ministerial, and he has no authority to go beyond the face of the petition or to resort to extraneous evidence to determine the contents of the petition. (*Wright* v. *Engram,* 186 Cal. 659 [201 Pac. 788]; *Williams* v. *Gill,* 65 Cal. App. 132 [223 Pac. 559]; *Ratto* v. *Board of Trustees,* 75 Cal. App. 724 [243 Pac. 466].)

The constitutional duties of the clerk or registrar with reference to the petition here involved are set forth in section 1 of article IV, as follows: "Within twenty days after the filing of such petition in his office the said clerk, or registrar of voters, shall determine from the records of registration what number of qualified electors have signed the same. . . . The said clerk or registrar, upon the completion of such examination, shall forthwith attach to said petition, except the signatures thereto appended, his certificate, properly dated, showing the result of said examination, and shall forthwith transmit said petition, together with his said certificate, to the secretary of state, and also file a copy of said certificate in his office." Provision is then made in said section of the constitution for the filing of a supplemental

216

petition, and the same duties are enjoined on the clerk or registrar as are provided in the case of the original petition, except that his examination and certificate as to the supplemental petition must be made within ten days after the supplemental petition is filed in his office. In addition to the duties provided by the constitution, said section 1083a of the Political Code enjoins upon the clerk or registrar the duty to determine the fact with respect to the purported signatures of any person "from the affidavit of registration, and records relating thereto, current and in effect at the date of such signing of such petition or paper." ▋ It appears from the petition herein that the clerks or registrars of the four counties in question have performed all of their duties in the premises, both constitutional and statutory. It must be noted that the duty of appending the dates of the signatures is not enjoined upon the clerk or registrar, but is enjoined on the signers of the petition. "The manifest purpose of the law requiring the signer to affix the date of signing is to guard against signatures by persons who are not qualified electors at the time of signing." (*Chester* v. *Hall, supra.*) Assuming that the clerk or registrar would be justified in rejecting the names of all persons as to whose signatures no dates of signing were affixed, it is clear that when, as here, dates of signing are actually affixed to the signatures of the 25,000 names in question, and the clerk or registrar has, upon an examination of said petition, determined that said 25,000 signatures were those of qualified electors entitled to sign the same, and has attached to said petition his certificate to that effect, and has transmitted said petition, except the signatures thereto attached, together with said certificate, to the Secretary of State, the fact that some person or persons other than the signers affixed said dates may not be inquired into in a *mandamus* proceeding against the Secretary of State.

▋ A *mandamus* proceeding in this state is an independent proceeding, having for its purpose the compulsion of an act which the law specially enjoins as a duty resulting from an office, trust, or station. (Sec. 1085, Code Civ. Proc.; *Sheehan* v. *Board of Police Commrs.*, 188 Cal. 535 [206 Pac. 70]; *Perrin* v. *Honeycutt*, 144 Cal. 87, 90 [77 Pac. 776].)

The duties of the Secretary of State in the premises are prescribed by the constitution. (Const., sec. 1, art. IV.) It is therein provided: "The second power reserved to the people shall be known as the referendum. . No act passed by the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act (with certain exceptions hereinafter referred to) . . . Upon the presentation to the secretary of state within ninety days after the final adjournment of the legislature of a petition certified as herein provided to have been signed by qualified electors equal in number to five per cent of all the votes cast for all candidates for governor at the last preceding general election at which a governor was elected, asking that any act or section or part of an act of the legislature be submitted to the electors for their approval or rejection, the secretary of state shall submit to the electors for their approval or rejection such act, or section, or part of such act, at the next succeeding general election. . . . " The clause in the above-quoted constitutional provision, namely, "a petition certified as herein provided," refers to the certification by the county clerks or registrars of voters, as elsewhere provided in the same section of the constitution, whereby it is made the duty of the county clerk or registrar, upon the completion of his examination of the said petition, forthwith to attach to the said petition, except the signatures thereto appended, his certificate showing the result of his examination. It thus appears that the Secretary of State receives nothing from the county clerks or registrars of voters save and except a copy of the petition and a supplement thereto, if any, and the certificate showing the result of the examination thereof by the clerk or registrar, as the case may be. The papers bearing the signatures appended to the referendum petitions and the dates affixed thereto are not transmitted to him. Consequently he is presumed to know nothing, and it is of no concern to him in the discharge of his official duties, as to what names are signed to the original petitions, whether the signatures appended to the original petition were appended by persons who were qualified electors at the time the names were signed, whether each or any signer had added his place of residence, whether each or any signer had affixed to his signature the date of his signing, or whether

the date affixed was appended by the signer or by some other person or persons. All of the matters enumerated are not within his province. They fall within the official cognizance of the clerks and registrars. When the Secretary of State receives, as it here appears affirmatively and without question he has received, the certificates of county clerks and registrars of voters showing that a sufficient referendum petition has been filed and that the requisite number of qualified electors has signed said petition within the time prescribed by law, it becomes the constitutional duty of the Secretary of State to submit the act named in the petition to the electors of the state for their approval or rejection. He is preparing to do this and his duty in the premises is ministerial. When upon his inspection of the certificates filed in his office it is disclosed to him that a sufficient number of qualified electors has signed the referendum petition, then, upon the ascertainment of that fact, his duty is mandatory. (See *Tulare Water Co.* v. *State Water Commission,* 187 Cal. 533 [202 Pac. 874].)

The petitioner earnestly contends that because fraud is alleged on the part of signers of the petition the conclusiveness of the certificate should not apply. Assuming that equitable relief may be available to prevent the certification of a referendum petition containing forged signatures or otherwise fraudulently presented to the clerk or registrar of voters, it is enough to say that such is not the relief here sought. As was said in *Wright* v. *Engram, supra,* at page 660: "If it should happen that names were forged to the petition in sufficient number to reduce the lawful signatures to the petition below the statutory requirement, persons legally interested might have a remedy, the nature and character of which we need not here decide."

It is earnestly insisted by the petitioner that the respondent Secretary of State occupies a position identical with that of the members of the various boards of trustees and city councils of the state who are charged by law with the calling of elections under referendum petitions and who have been subjected to judicial process to the end that the true facts be ascertained and appropriate action be taken, as disclosed by numerous cases cited by petitioner. It may be said that some similarity exists between the position of the local governing bodies charged with the duty of calling elec-

tions under referendum proceedings and the position of the Secretary of State in submitting a statute subjected by proceedings in referendum to a vote of the people of the state at large. The similarity consists in this, that when the facts exist and the proceedings are regular the duty of each becomes mandatory. But their positions are not otherwise the same. The Secretary of State is so far removed from the *locus in quo* and his duties in the premises are such as to render it imperative that all questions of alleged irregularity in the signatures appended to the referendum petitions, concerning which the Secretary of State has no official cognizance, should be raised and tried out before the certificates reach his office. Those charged with fraud or irregularity may then be made parties to the proceeding and the ends of justice be accomplished. It may readily be seen what confusion would result if the Secretary of State should be charged with or take upon himself the duty of supervising the duties of the clerks and registrars in the checking of such petitions. His activities in that respect might be statewide and be entirely beyond his power to complete with the resources at his command and within the time required by law. The constitutional right of the people under the referendum may not thus be jeopardized. It may be that the Secretary of State might be charged with that duty by proper legislative enactment, but it would be unreasonable to conclude that under present law he has anything to do with the checking of the names of the referendum petitions or with the form or substance of those portions of the petitions which bear the signatures of electors.

■ Counsel appearing as *amici curiae* in support of the petitioner's position, make the further contention that by the amendment of section 6 of article IV of the constitution in 1926 the referendum provisions of section 1 of the same article do not apply to the legislative enactment in question. That portion of the amendment which forms the basis of the contention is the part which provides that if the legislature should fail to re-apportion the state as required by the section, a re-apportionment commission, constituted as therein provided, should re-apportion the assembly and senatorial districts according to the requirements of the section and that such re-apportionment should be effective the same as though

the said act of re-apportionment were an act of the legislature, "subject, however, to the same provisions of referendum as apply to the acts of the legislature." From the proviso just quoted it is argued that the referendum is thereby made to apply only to apportionment by the commission. There is no merit in the contention. Section 1 of the article, as above noted, provides that "no act of the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act, except acts calling elections, acts providing for tax levies or appropriations for the usual current expenses of the state, and urgency measures. . . . " The re-apportionment act here in question does not fall within the classification of any of the specially excepted enactments and the amendment of section 6 in 1926 does not except it. Not only is this so, but the said amendment, to make assurance doubly sure, provides that the apportionment by the commission shall be subject to the same provisions of referendum as apply to the acts of the legislature, including, of course, the act here in question. The obvious meaning of the constitutional amendment is contrary to that placed upon it by these *amici curiae.*

From the foregoing it necessarily follows that the demurrer should be sustained and the peremptory writ be denied.

It is so ordered.

Waste, C. J., Preston, J., Curtis, J., Langdon, J., Seawell, J., and Richards, J., concurred.